## CHRISTIAN ANDERSON v. FOLEY BROS. and Another.[1]

February 11, 1910.

Nos. 16,415—(186).

**Amendment of Complaint.**

The trial court did not err in permitting respondent to amend the complaint during the trial by inserting the correct name of the appellant company copartnership.

**Respondeat Superior.**

The relations of parties was such, as established by them, that the rule of respondeat superior applied.

**Negligence — Verdict Supported by Evidence.**

The evidence sustains the conclusion of the jury that appellant was guilty of negligence in maintaining a defective footboard on an engine, which was the cause of respondent's injuries.

**Contributory Negligence.**

It does not conclusively appear from the evidence that respondent was guilty of contributory negligence.

**Requests to Charge Jury.**

The court substantially instructed the jury in the general charge in accordance with certain written requests presented by appellant, and which had been marked "given."

Action in the district court for Ramsey county against Foley Bros., a corporation, and one Larson whose first true name was unknown, doing business as Foley Bros. and Larson Company, to recover $26,000 damages for personal injuries. The complaint alleged that the con-

[1] Reported in 124 N. W. 987.

struction track maintained by defendants was in a very dangerous and defective condition; that defendants directed plaintiff to board a construction engine which carried a defective footboard which was without grab-bars for the employees to hold on to while riding; that defendants did not provide rules for the conduct of their business. Defendant corporation answered denying the alleged negligence and "that any such organization as Foley Bros. and Larson Company ever existed." The case was tried before Bunn, J., and a jury which returned a verdict in favor of plaintiff for $11,000. From an order denying the motion of defendant corporation for a new trial, defendant appealed. Affirmed.

*Harris Richardson* and *Harold C. Kerr,* for appellant.

*Hall & Kolliner* and *Olaf L. Bruce,* for respondent.

LEWIS, J.

Respondent was a common laborer, working for Foley Bros. & Larson Company, a copartnership engaged in railroad construction work, and brought this action to recover damages for the loss of his leg, occurring through injuries received while riding on one of the engines.

1. In the original complaint and summons the partnership was designated as "Foley Bros., a corporation, and one Larson, whose first name is to plaintiff unknown, doing business as Foley Bros. & Larson Company." After the trial had proceeded several days, it transpired that the true name of the copartnership was Foley Bros., Larson & Co., and respondent moved to amend his complaint accordingly. This was objected to by appellant, upon the ground that the answer of Foley Bros. denied that any such organization as Foley Bros., Larson & Co. existed, and appellant requested a continuance of the case for the purpose of answering and setting up the facts with respect to the parties constituting the partnership of Foley Bros., Larson & Co. The trial court permitted the amendment, and denied appellant's request for a continuance and motion to amend, upon the ground that the amendment was not material, being merely descriptive, and that in any event it was too late to raise the objection that there were other parties who had not been made defendants. We

agree with the trial court. The facts were all within the knowledge of appellant, and, if there was a defect of parties not appearing upon the face of the complaint, the true situation should have been set forth in the answer in the first place.

2. Foley Bros., Larson & Co., a corporation, entered into a contract with the Minneapolis, St. Paul & Sault Ste. Marie Railway Company, agreeing to perform certain railroad construction, and thereafter entered into a subcontract with one Richard Evans, according to the terms of which Evans agreed to construct a certain portion of the railroad in accordance with the terms and specifications of the original contract. The work was commenced in 1906 and continued into 1907, and respondent claims that at the time of his injuries, which occurred in August, 1907, Evans had ceased, to all intents and purposes, to be an independent subcontractor, if, indeed, he ever had been one, and that Foley Bros., Larson & Co. had assumed control and were prosecuting the work to its completion.

One of the chief contested questions at the trial was whether respondent was employed by Foley Bros., Larson & Co., or by Evans. The contract with the railroad company provided that Foley Bros., Larson & Co. should retain the supervision of the construction work as it progressed, and, should the work be sublet, the subcontractor should be regarded as the foreman of the contractor, and there was a decided conflict in the evidence as to which party was conducting operations at the time of the accident. The trial court was of opinion that upon the face of the contracts Evans should be considered an independent subcontractor, and submitted to the jury the question whether the company had assumed control. The law on this subject is well settled. The contracts themselves do not necessarily govern the question, and the relation of respondeat superior may depend entirely upon the conduct of the parties. Rait v. New England F. & C. Co., 66 Minn. 76, 68 N. W. 729; Roe v. Winston, 86 Minn. 77, 90 N. W. 122; Klages v. Gillette-Herzog Mnfg. Co., 86 Minn. 458, 90 N. W. 1116. There was evidence which tended to show that appellant had assumed control of the work, not alone for the purpose of supervision, but was engaged in actual performance of the subcontract. There was evidence to the effect that Evans had become

financially embarrassed, was running behind with his work, and likely to be unable to finish it within the required time; that some of the men had left his employment; and that appellant had practically taken over the work and made it their own. The question was carefully presented to the jury by the trial court, and the evidence is sufficient to sustain the finding.

3. In the prosecution of the work a narrow-gauge railroad track was laid between the point of excavations and the fill. Five or six dinky engines—a small engine about six feet four inches wide, and about twelve or thirteen feet long—were used on this track, with dump cars, for grading purposes. This type of engine was provided with a crossbeam in front, to which was attached a footboard divided into two separate sections by the crossbar projecting out from the crossbeam in the center, each half being about two and a half feet long and eight inches wide. There was also a rear footboard, and boards on both sides of the tank from the cab forward. The engines were used daily in carrying a large crew of laborers from one portion of the work to another, and they were in the habit of standing on the various footboards, and in fact wherever there was any available space.

On the day of the accident a number of the men had been engaged in getting a derailed engine back onto the track. It was about five o'clock in the afternoon when that work was finished, and the men, who were more or less scattered along the track, were directed to take the first engine back to the dump. Respondent and his partner, Hanson, had walked a short distance toward the east, on the north or left side of the track, and the engine approached slowly, allowing the men to get on. Just as the engine overtook them, Hanson got up on the footboard and sat down astride the drawbar, followed by respondent, who seated himself on the crossbeam to the left of Hanson. The brakeman was seated on the right side. According to respondent's testimony, the engine had gone forward about ten or fifteen feet when the footboard under his feet gave way, letting his foot down on the track. The toe of his shoe caught in a tie, and the footboard came against his leg, so that he fell out toward the left side

of the track, and his right foot was run over by the engine, necessitating amputation above the knee.

The evidence was somewhat conflicting as to the condition of the footboard. Respondent and the brakeman claimed that the left section was split and the remaining part only three inches wide and unfastened at one end. If the footboard was in the condition described, it is not at all improbable that the accident may have happened after respondent had taken his position on the engine, as he testified. The engineer stated that the board had been in this condition for a considerable time, and that he had requested that it be repaired. It was customary for the men to ride on the front of the engine, and under such circumstances we are satisfied that the evidence was sufficient to sustain the charge that appellant was guilty of negligence in maintaining a defective footboard, which was the cause of respondent's accident.

4. Had respondent observed the condition of the footboard at the time he stepped upon it, or if he had attempted to get on without instructions, he might be open to the charge of contributory negligence. But in going back and forth from one place to another the men were not only accustomed to ride on the engine, but had been directed to do so. Although this respondent had not heretofore taken position on the front of the engine, such was the practice by men in general, and there is no evidence that orders had been issued to the contrary. It was not made to appear that respondent knew this particular footboard was out of order. The engine was coming along very slowly, the brakeman was riding there already, respondent's partner got on safely, and there was nothing special to warn him of danger. It is not very clear how he came to slip and fall after being seated on the engine, but it was for the jury to say whether or not he was guilty of contributory negligence.

5. Appellant made several requests for instructions, which the trial court marked "given," but which it is claimed were not given in the language of the request. We have examined all these, and the general charge, and are of opinion that the objection is not well taken that the court failed to give the instructions substantially as requested. The statute requires the court to mark as "given," "refused," or

"modified" any requests which may be handed in by counsel; but the statute does not require the court to give requests in the exact language in which they may be presented. The object of requiring the court to mark instructions is to notify counsel what propositions of law the court will submit to the jury, in order that counsel may be enlightened in arguing the case to the jury. The general charge substantially covered every point presented by the several requests, and the assignments of error in this respect are without merit.

The award of $11,000 for the loss of a right leg is not so excessive as to indicate that it was given under the influence of passion or prejudice. Sloniker v. Great Northern Ry. Co., 76 Minn. 306, 79 N. W. 168; Tierney v. Minneapolis & St. L. Ry. Co., 33 Minn. 311, 23 N. W. 229, 53 Am. Rep. 35.

Affirmed.