SUSIE ROOT, Appellee, v. SHADBOLT & MIDDLETON et al.,
Appellants.

**EVIDENCE:** Parol as Affecting Writings—Incomplete Writing. A written contract may be supplemented by oral testimony as to matters not covered by the writing.

**MASTER AND SERVANT:** Workmen's Compensation Act—Issue of Employment. On the issue whether an injured party was the employee of one or the other of two parties, oral testimony is admissible as to the conduct of said two parties in reference to their operations and the manner in which such operations were being carried on; and this, too, irrespective of the fact that a written contract existed between said two parties.

**MASTER AND SERVANT:** Workmen's Compensation Act—Issue of Employment. On the issue whether an injured party was the employee of one or the other of two disputants, *power to control the work* is conclusive, even though there was but little occasion to employ such power.

**MASTER AND SERVANT:** Workmen's Compensation Act—Evidence on Appeal. On appeal from the arbitrator's award, additional testimony in the form of depositions may be received.

**MASTER AND SERVANT:** Workmen's Compensation Act—Findings by Commissioner. Principle reaffirmed that a finding of fact by the industrial commissioner on supporting testimony is conclusive on the courts.

*Appeal from Palo Alto District Court.*—JAMES DELAND, Judge.

MAY 15, 1923.

APPEAL from award under the Workmen's Compensation Act.—*Affirmed.*

*Miller, Kelly, Shuttleworth & McManus,* for appellants.

*Davidson & Burt,* for appellee.

ARTHUR, J.—While engaged in hauling gravel on a highway contract in Palo Alto County, Iowa, February 25, 1921, Oscar Root, husband of claimant, sustained fatal injury, by a cave-in at a gravel pit. The committee of arbitration found that Oscar Root, deceased, was one of the employees of W. G. Middleton and Shadbolt & Middleton, which fact entitled claimant to compensation of $15 a week for 300 weeks. On appeal, the industrial commissioner found in favor of claimant, and affirmed the decision of the arbitration committee. Appeal was taken to the district court, and the court, on the trial, affirmed the decision of the industrial commissioner, and entered judgment accordingly, from which judgment this appeal is taken.

The findings of the industrial commissioner on review were:

"The facts involved in this case are substantially as follows: Under contract with the county of Palo Alto, this defendant was graveling a highway between Ayrshire and Ruthven in said county, in the latter part of 1920 and the earlier months of 1921. The work had been sublet to the Motor Truck Service Company, of Minneapolis. In the latter part of November, 1920, the Minneapolis contractor abandoned the work. On or about December 1, 1920, W. G. Middleton, a defendant herein, arranged with William M. Twigg, a farmer living in the vicinity of the work, to take charge of the gravel operation on the part of these defendants, as contractor with the county. The engagement was made on the basis of conversation, more or less confirmed by a letter dated December 2, 1920, from W. G. Middleton to William Twigg (and also signed by Twigg), which appears in this record as Exhibit A. Under this arrangement, Twigg proceeded to employ farmers living in the vicinity of the work, to haul gravel from a pit supplied by the county to a point on the highway under construction, as directed by a representative of the county and of the contractors, in accordance with requirements of the situation. Oscar Root was one so employed, who contributed to the performance of this contract the services of himself and his team. Manifestly, the defense chiefly relied

upon by these defendants is based upon the claim that William M. Twigg, and not W. G. Middleton or Shadbolt & Middleton, was the employer of these haulers, and consequently the one beholden to this claimant in compensation or in damage contribution.    Under the arrangement between Middleton and Twigg, the latter was to have entire immediate charge of the work, and do all the hiring of haulers, while payment of wages was to be made entirely by the former.    Exhibit A, referred to, contains very vague definition of the relationship between Middleton and Twigg.    It is simply a letter, written, as it states, to confirm arrangements made in conversation.    In *Anderson v. Foley Bros.*, 124 N. W. 987, the Supreme Court of Minnesota makes this statement:    Whether an employer is an independent contractor does not necessarily depend upon the contracts under which he operates, but may depend entirely upon the conduct of the parties.    This judicial declaration above quoted would seem to be of practical application in this case.    The 'conduct of the parties' would seem to justify the conclusion that it was never the intention either of Middleton or of Twigg that the latter should be regarded in a legal sense as the employer of the men hauling gravel.    Scrutiny of the evidence discloses the superior authority of Middleton and the inferior attitude of Twigg in contractual relationship.    It was the custom of workmen on the job to appeal from Twigg to Middleton, as to matters of employment.    Middleton was regarded as the one higher up, in actual control of the situation.    There is nothing in the record which seems to logically point to the conclusion that Twigg should be regarded as a subcontractor to Middleton, rather than his employee.    Firm ground seems to exist for the opinion that Shadbolt & Middleton or W. G. Middleton was the contractor, the only contractor, the final authority in this relationship. Another question given much less emphasis by the defense is worthy of more serious consideration.    There is in the record evidence suggesting independent employment on the part of the haulers on this highway work.    The fact that they were paid by the yard, instead of by the day, is not controlling, but more or less significant.    The further fact that they were not required to commence work at any given time in the morning, or to continue work until any definite time in the evening, and that they

might drop out for the day when it was for their interests so to do, is more or less consistent with the elements of independent employment. While this may be regarded as a border-line case, however, there would seem to be basis for the conclusion that there was exercised enough of control as to the manner in which this work was performed, of the method of employment and power to discharge, as to bring the employment of Oscar Root within the relationship of an employee of the contractor. At the gravel pit, definite authority was exercised as to the order of loading, the manner of loading, and as to keeping the pit in order for successful service. The right to discharge was exercised by Twigg when a hauler named Gene Sherlock was dismissed from employment, because he persisted in disobedience of pit rules. In *Powley v. Vivian & Company*, as reported in Bradbury on Workmen's Compensation (3d Ed.), page 133, is found searching analysis in concrete form as to underlying principles of contractual relationship applying to the instant case. 'The true test of a contractor would seem to be that he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. The one indispensable element to his character as an independent contractor is that he must have contracted to do a specified work and have the right to control the mode and manner of doing it.' In the same opinion, on page 134, appears this significant expression: 'An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work.' It cannot be assumed that, in his relations with his employer, Oscar Root was responsible only as to the 'result of his work.' It would seem safe to assume that he was strictly held 'to the means by which it is accomplished.' To assume that he had 'the right to control and the manner of doing' is to ignore conditions of service plainly manifest in the record. It is right to say that he was doing his work 'according to his own methods and without being subject to the control of his employer except as to the result of the work.' Honnold on Workmen's Compensation, Vol. 1, page 208, declares: 'It is not possible to lay down

a hard and fast general rule or state definite facts by which the status of men working and contracting together can be definitely defined in all cases as employee or independent contractor. Each case must depend on its own facts. Ordinarily, no one feature of the relation is determinative, but all must be considered together. A contractor is ordinarily one who carries on an independent employment and is responsible for the results of his work, one whose contract relates to a given piece of work for a given price. These characteristics, however, though very suggestive, are not necessarily controlling. Generally speaking, an ''independent contractor'' is one who exercises an independent employment and contracts to do a piece of work according to his own method, without being subject to the control of the employer, save as to the results of his work. One test, sometimes said to be decisive, is as to who has the right to direct what shall be done, and when and how it shall be done, who has the right to the general control.' As suggested, 'the right to direct' and 'the right to general control' is vital in the establishment of employment relationship. As frequently held, the degree to which direction and control is exercised is not so important as the manifest right to direct and control where controversy may arise. Familiarity with this record develops the impression that the controlling factor in this road-making proceeding was the defendant herein, as represented by himself or by his agent; that it was within this authority to direct as to means employed and manner of performance and to discharge, peremptorily or otherwise, any workman on the job. *Travis v. Hobbs, Wall & Co.*, 2 Cal. Indus. Acc. Com. 481, is singularly analogous with the case under consideration. While working as a shingle bolt maker, applicant was injured by a log rolling upon and over him. It appeared that he was put to work cutting shingle bolts by defendant's foreman, being paid at the rate of $1.75 per cord. Although the work was on a piece basis, applicant received his pay on defendant's regular pay day, when the men in defendant's camp working on a monthly basis were also paid. He did not report daily to the company, and was not controlled as to the amount of time put in by him. The foreman showed him where to start and the size of shingle bolts to be cut, and inspected his work from time to time. The indus-

trial accident commission held that the fact that applicant was paid by the cord, or was a piece worker, did not necessarily determine his status, and that it has been affirmatively held that these circumstances did not remove him from the category of employees. *In re Cowell's Estate;* 167 Cal. 222, 227 (139 Pac. 82, 84 [1914]). It was said: 'While it is true that there is not to be found here a considerable measure of direction, control and order of the work, there is a general supervision * * * and a general direction of the work by the * * * defendant. The nature of the work done, the terms of the employment and the location of the place of employment make it plain that close supervision of the work was not required or contemplated by the contract of hire between the parties.' An award was made in favor of applicant. All this cogent reasoning upon a state of facts certainly no more favorable, applies with emphasis to the instant case. In reaching the conclusion that the rule of greater probability justifies an award to this claimant, the commissioner does not lose sight of the conclusions or the reasoning of our Supreme Court in *Pace v. Appanoose County,* 184 Iowa 498, or *Norton v. Day Coal Co.,* 192 Iowa 160. It is believed that careful analysis of the evidence in the pending case and a comparison with facts developed in the cases referred to, justify holding for this claimant, without in any degree doing violence to these decisions or the reasoning therein. The decision of the arbitration committee is affirmed.''

I.    The chief defense to the action is based upon the claim that Twigg was an independent contractor in a contract between him and Middleton, and consequently, the one liable to claimant; that Twigg was not the employee of Middleton or Shadbolt & Middleton; and that, therefore, Shadbolt & Middleton are not liable. It is also claimed by defendants that Root had an independent contract with Twigg. Some time prior to December 20, 1920, Middleton and Twigg had conversation in regard to Twigg's taking charge of the gravel work on the road under construction. On December 2d, Middleton addressed a letter to Twigg, which was also signed by Twigg, as follows:

''In confirmation of our conversation with regard to the gravel hauling yet to be done by me under my contract with the county on the Ayrshire-Ruthven road. It is understood that

you will undertake to do this hauling with enough teams to do the work to the best advantage, work to be started by you on December 6th, unless weather conditions make it impossible to start at that time, and the job pushed to completion at the earliest possible moment consistent with weather conditions. Payment will be made by me to you, or to whom you may designate, in county road warrants on monthly settlements under the supervision of the county engineer; payment to be made on the following basis, for loading and hauling the first mile, and spreading, seventy cents, for hauling each additional half mile, twenty-five cents; stripping at the pit to be paid at the rate of seventy-five cents. These prices refer to a unit of one yard, and in addition to them you are to be allowed an additional sum of five cents per yard for each yard hauled. Kindly acknowledge receipt of this, so that we may have no misunderstanding of the matter.''

It is the claim of defendants that the above quoted letter was a complete contract between Middleton and Twigg, and that oral testimony was not admissible to show other matters of contract between the parties. It was the position of claimant that the writing did not cover a number of matters that were understood and agreed to between Middleton and Twigg. The court received testimony of matters not covered in the letter; and defendants assign this as error.

1. EVIDENCE: parol as affecting writings: incomplete writing.

The oral testimony showed the duties which Twigg was to perform for the five cents per yard for each yard of gravel hauled, mentioned in the letter; that he was to oversee the pit and maintain it in condition so that haulers other than himself could get in and out of it; that he was to maintain the roads in good condition; that he was to see that the earth on top of the gravel was stripped off, to break down the banks with dynamite, etc. This testimony as to oral agreement or understanding between Middleton and Twigg was received on the theory that the letter did not cover the entire contract between Middleton and Twigg, and that the oral evidence was admissible to show the entire agreement or understanding between them. We think it was not error to receive and consider the oral testimony. *Sutton v. Weber,* 127 Iowa 361; *Wells v. Hocking Valley Coal Co.,*

137 Iowa 526; *Canfield Lbr. Co. v. Kint Lbr. Co.*, 148 Iowa 207; *Sieberts v. Spangler*, 140 Iowa 236.

We think that the testimony was admissible also because Root was not a party to any contract between Middleton and Twigg, and claimant was entitled to show the actual relations,

**2. MASTER AND SERVANT: Workmen's Compensation Act: issue of employment.** contractual and otherwise, between Middleton and Twigg; that it was competent to show such relationship by the conduct of the parties, and what they said and what they did in the premises, and the manner in which they dealt with the operations that were being carried on under the contract between them. *Anderson v. Foley Bros.*, 110 Minn. 151 (124 N. W. 987); *Coppes Bros. & Zook v. Pontius*, (Ind.) 131 N. E. 845.

It is apparent from the testimony of both Middleton and Twigg that there were certain matters agreed upon orally between them which were not placed in the letter. It conclusively appears in the record that neither Middleton nor Twigg regarded the letter as an entire contract. Nothing was said in the letter about placing a foreman in the pit, and yet this was talked over between Middleton and Twigg; and the evidence fairly shows that it was agreed that Twigg should act for Middleton as foreman of the pit, and was to receive compensation therefor and for hiring the men, in the amount of five cents per yard. The evidence shows that Twigg received the same compensation per yard for hauling as did all the other haulers, and that all of the employees were paid by Middleton, for Shadbolt & Middleton; that, when Twigg refused to hire certain men to haul, they appealed to Middleton, and he overruled Twigg. Twigg assumed no financial responsibility or risk. He had no chance to make any profit or sustain any loss. He simply received compensation from Shadbolt & Middleton, through Middleton, for his work. It is evident that the letter did not embrace the whole contract. We think it clear from the testimony that Twigg was the employee of Middleton, and not a subcontractor or independent contractor of the work. The letter states that Twigg was to receive five cents per yard upon every yard hauled by all the haulers. This five cents per yard was compensation to Twigg as foreman of the pit, and was his pay for overseeing the pit, keeping the pit clean, so that the haulers could get in and out,

stripping the pit, and maintaining the roads. It is clear that Root was taking directions from Twigg, and that he was not an independent contractor. There were a number of different teamsters hauling gravel, and it might as well be said that each of them was an independent contractor as to say that Root was.

II.  We think it is abundantly shown in the record that neither Twigg nor Root was a subcontractor or an independent contractor, but that Middleton, for Shadbolt & Middleton, contractors with the county, was in authority, and had control of the work. Evidently he had the, right to control the work, although he had little occasion to exercise such control. On this point, see *Franks v. Carpenter*, 192 Iowa 1398, in which we said:

3. MASTER AND SERVANT: Workmen's Compensation Act: issue of employment.

"The same general rule was approved in *Norton v. Day Coal Co.*, 192 Iowa 160. Applying this test to the facts of the case before us, we conclude that the finding of the commissioner that, at the time of the death of Franks, both Franks and Hudson were the employees merely of Carpenter is fully sustained by the evidence. Carpenter, at the time Hudson was employed by him, knew that Hudson understood the work of constructing sewers and would be a good man to place in charge of the work at Conroy. Nothing was said between Carpenter and Hudson as to the manner of doing the work, nor is there anything in the contract or arrangement between them, or in the manner in which it was carried out, to indicate that Carpenter in any respect waived his right to control or direct the time or manner of making the excavation and laying the drain. There was no occasion for any specific reservation of this right. It is true that Carpenter was not present at any time during the progress of the work, but, manifestly, he had the right to discharge Hudson, Franks, or any other employee on the job, and to absolutely direct Hudson in everything he did in the work of putting in the drain. The fact that he refrained from doing so is not of controlling importance. Hudson furnished none of the material, and was paid 50 cents per hour for his time, the same as the other employees. He assumed the position of foreman, but this was clearly contemplated by Carpenter at the time of his employment. The tools furnished by Hudson were simple tools, and, under his contract with Carpenter, he assumed no liability

and incurred no financial responsibility. He stood no chance to make a profit or to suffer a loss. He kept the time of himself and the other men and delivered it to Carpenter, who gave or sent him a check for the amount shown thereby to be due the men. Hudson merely distributed the money sent him by Carpenter. The commissioner gave considerable significance to the fact that Carpenter paid Hudson for taking Franks in his automobile to Conroy. This is an important fact. Significance is also given by counsel for appellants to the fact that Hudson and the men employed with him determined how the work should be done, the number of hours they would work each day, at what time they would begin, and at what time they should quit, and what time they would take at noon for lunch. These were all matters within the control of Hudson, as foreman. There was nothing in the contract between Hudson and Carpenter to prevent the latter from fixing the time for the men to commence work and the number of hours they should work each day. He simply refrained from doing so, and left it all to the discretion of Hudson. This did not make him an independent contractor.''

Also, see *Brower v. Isgrigg & Son,* 216 Mich. 365 (185 N. W. 664); *Cockran v. Rice,* 26 S. D. 393 (128 N. W. 583); *Franklin Coal & Coke Co. v. Industrial Com.,* 296 Ill. 329 (129 N. E. 811); *Klages v. Gillette-Herzog Mfg. Co.,* 86 Minn. 458 (90 N. W. 1116).

III. After appeal was perfected from the award of the committee of arbitration, application was made by claimant to the industrial commissioner for permission to offer additional testimony, when the case would come on for trial before the commissioner, of several witnesses, in the form of depositions. The commissioner entered an order, without notice to defendants, authorizing the taking of such depositions. Afterwards, defendants moved to set aside the order, on the ground that defendants had no opportunity to resist the application, and that the commissioner acted without and in excess of authority in making the order. This motion was overruled. Afterwards, application was made to the district court of Palo Alto County for permission to take said depositions upon the review of the award of the arbitration committee, and permission was

4. MASTER AND SERVANT: Workmen's Compensation Act: evidence on appeal.

granted by said court, and the court entered an order authoriz-
ing the taking of such depositions on ''notice to opposite party,
as provided by law.'' Defendants moved to set aside the order,
which motion was overruled. On hearing before the commis-
sioner, defendants moved to suppress the depositions on the
same grounds theretofore interposed, and further, that said
depositions were not taken as provided by statute for taking
depositions in the district court.

Section 2477-m32, Code Supplement, 1913, provides:

''If a claim for review is filed, the industrial commissioner
shall hear the parties and may hear evidence in regard to any
or all matters pertinent thereto.''

It will be observed that said section does not mention evi-
dence in the form of depositions.

Section 2477-m24, Code Supplement, 1913, as amended by
Chapter 409, Acts of the Thirty-Seventh General Assembly, pro-
vides:

''* * * The deposition of any witness may be taken and used
as evidence in any hearing pending before a board of arbitra-
tion in workmen's compensation proceeding in connection there-
with. That such deposition shall be taken in the same manner
as provided for the taking of depositions in the district court,
and when so taken shall be admissible in evidence in such hear-
ings in the same manner subject to the same rules governing the
admission of evidence in the district court. Application for
permission to take depositions in such case shall be filed in the
district court of the county wherein the case for arbitration shall
be heard.''

It is the contention of defendants that it was error to re-
ceive the depositions in evidence; that the depositions should
have been suppressed, because the statute does not provide that
depositions of a witness can be taken and used as evidence in
a hearing upon review before the industrial commissioner.

It is true that the statute provides that a deposition ''may
be taken and used as evidence in any hearing pending before a
board of arbitration.'' We think that the language of the stat-
ute was not meant to restrict the taking and use of a deposition
to the hearing before the board of arbitration, but that the lan-

guage used refers to a proceeding,—that is, a claim pending under the Compensation Act.

Section 2477-m24, Code Supplement, 1913, which is amended, relates to powers of the commissioner to make rules and regulations, to subpoena witnesses, etc.; and then comes the amendment providing for depositions:

"The deposition of any witness may be taken and used as evidence in any hearing pending before a board of arbitration in workmen's compensation proceeding in connection therewith."

If the depositions in question should have been suppressed, it would have been because they were not taken in the "same manner as provided for the taking of depositions in the district court." Code Section 4685 provides:

"If the deposition is to be taken within the state, it may be upon notice or upon commission."

The depositions in question were taken on notice within the state.

Code Section 4698 provides:

"The notice of taking a deposition by either of the methods, except as otherwise provided, shall be, when served on the attorney, at least ten days, and upon the party within the county where the deposition is to be taken or the commission sued out, at least five days."

Notice of taking depositions was issued and service was accepted as follows:

"To Shadbolt & Middleton and Miller, Kelly, Shuttleworth & Seeburger, and Morling & Morling, their attorneys:

"You are hereby notified that, in connection with the review of the industrial commissioner of the above entitled cause, the claimant has asked permission to take further evidence. And you are further notified that the claimant will, on the 21st day of November, 1921, at 10 o'clock A. M., at the office of Davidson & Burt in the city of Emmetsburg, Palo Alto County, Iowa, before J. W. Neary, notary public in and for said county, take the evidence of the following, to wit, Ed Ault, Will Hagan, William M. Twigg, and that the claimant will recall W. G. Middleton for further cross-examination. You are therefore

advised that you may appear at that time and examine said witnesses in behalf of the defendants if you so desire. And you are notified that said depositions when completed will be presented to and filed with Hon. A. B. Funk, industrial commissioner of the state of Iowa, at his office in Des Moines, Iowa, to be used by him in connection with the evidence already taken upon the hearing before the arbitration commission, and to be considered by him in the review of said case.

"[Signed]   Davidson & Burt.

"The undersigned Shadbolt & Middleton hereby accept service of the foregoing notice of taking of depositions and acknowledge receipt of a copy thereof this 14th day of November, 1921.

"[Signed]   W. G. Middleton, Defendants,
"For Shadbolt & Middleton."

We think that the depositions were properly received in evidence, and that it was not error to overrule motion to suppress them. In this connection, we may say that the evidence was sufficient to sustain the award of the commissioner and the court, without consideration of the testimony contained in the depositions.

IV. Defendants make some contention that Middleton individually was the contractor with the county, and that the firm of Shadbolt & Middleton was not the contractor. This claim is without merit. The record shows conclusively that Middleton was the active business man of the firm, and transacted the business involved in this case for and in behalf of the firm of Shadbolt & Middleton, and that Shadbolt & Middleton were the contractors, and not Middleton individually. We have not set out the testimony in detail, but have carefully examined the whole record.

5. MASTER AND SERVANT: Workmen's Compensation Act: findings by commissioner.

In many cases, we have held that the finding of the commissioner stands upon the same footing as that of the verdict of a jury or a court, and that it is not to be set aside if there is evidence upon which the finding can rest. Whether or not Root was an independent contractor, and whether or not Twigg was an independent contractor and Root his employee, or

whether Twigg was the employee and foreman on the job for Shadbolt & Middleton, were ultimate facts to be determined, and were decided in favor of claimant by the committee of arbitration, the commissioner, and the court.

We reach the conclusion that the findings and order of the commissioner are sustained by the proof. The judgment of the court below, affirming the order of the commissioner, is, therefore, affirmed.—*Affirmed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.