M. J. BURNS, Appellant, v. A. R. ENO, Appellee.

No. 41027.

JANUARY 12, 1932.

D. M. Kelleher and Richard F. Mitchell, for appellant.

Gray & Gray, for appellee.

EVANS, J.—The collision complained of occurred on the morning of August 11, 1928, a little earlier than the noon hour. The place of the accident was at the intersection of the Illinois Central Railway Company with a north and south highway, which runs along the east line of the town of Knierim. The Illinois Central Railway runs westerly at this point, and skirts the southern edge of the town. The place of the accident was therefore near the southeast corner of the town. The plaintiff was an employee of the Illinois Central Railway Company, and the general scope of his duties was to perform the painting work

upon the bridges. On the morning in question, he was acting under the supervision of his superior, Morphew, who was the superintendent of bridges. These two were proceeding together to the town of Richards, located upon this railway and lying some distance to the west of the town of Knierim. For the purpose of travel they were using a so-called "gas car". This was a very small vehicle propelled by a gasoline engine. It was 5 feet long, 3 feet high, and as wide as the rails. It weighed 350 pounds. It had neither siren nor horn nor whistle nor any method of warning in its approach to the crossing. As a control, it had a hand brake. These two parties started their trip at Fort Dodge and were proceeding westerly. Both of them were familiar with the railway and its intersections. At a point about 250 feet east from the intersection, the plaintiff observed two gravel trucks approaching the intersection from the north. The drivers of these two trucks proved to be Stover and Gibson. Stover was driving a Ford truck loaded with gravel, and Gibson was driving a larger truck loaded with gravel. Stover was travelling 25 or 30 miles an hour, and Gibson about 5 miles per hour faster. Before they arrived at the intersection, Gibson had passed Stover. This occurred at a point approximately 50 feet north of the intersection. When the plaintiff observed the approach of the trucks, he threw off his clutch and slowed down. He had been travelling 15 miles an hour. He slowed down to a coasting speed of 10 or 12 miles. A moment later he thought he could cross the crossing in advance of the approaching trucks, and he threw in his clutch and picked up speed. Gibson went over the crossing in front of him. Both occupants of the gas car jumped therefrom. The car proceeded, and struck the left hind wheel or fender of Gibson's truck. This had no effect upon the progress of Gibson. A bent fender was the only damage sustained by him. The contact, however, stopped the gas car on the crossing. A moment later a collision with Stover's truck resulted, which threw the gas car against the plaintiff, resulting in very severe injury.

The principal questions which inhere in the case and which are presented for our consideration are, briefly:

(1) Was either Stover or Gibson guilty of negligence as the proximate cause of the collision?

(2) Was the plaintiff himself guilty of negligence?

(3) Was either Stover or Gibson the employee of Eno in such sense as to render Eno liable for his wrongful acts; or, on the other hand, was either of them an independent contractor, rather than an employee?

The emphasis of the argument is concentrated somewhat upon the last question, viz., Was Stover an independent contractor rather than an employee?

To this latter question we will give our first attention. The relation of Gibson to the event under consideration may be eliminated from the discussion. He sustained no contractual relation with Eno, unless it be a constructive one. He was primarily the employee of Connors. Connors was the owner of an equipment for hauling gravel, including a gravel truck. He bargained with Eno for the delivery of gravel from the pit to the place of distribution at an agreed price per yard per mile. Connors did not perform the service contracted for in person, but employed Gibson to do so, for a wage assumed and paid by Connors. Gibson had no personal contact, contractual or otherwise, with Eno. Whether Eno could be rendered liable upon any hypothesis for any act of negligence on the part of Gibson in driving the truck of Connors, we will not now consider. At this point we confine our discussion to the question whether Stover was an independent contractor, as distinguished from the mere employee of Eno.

The question raised is one which lends itself to endless debate and rather plausible argument on either side. Discussion of the question abounds in the books. Harmony is apparent in the statement of principles and in the platitudes and abstract phases of the subject. But in the application of the abstract to the concrete, and of the principles to the particular case in hand, there is much diversity and confusion of opinion in the precedents in different jurisdictions. In this state of the precedents, we can only hope to maintain, if we may, consistency in our own decisions.

As to these, the appellant relies mainly upon two cases: Root v. Shadbolt & Middleton, 195 Iowa 1225, and Mallinger v. Webster City Oil Company, 211 Iowa 847. In each of said cases we sustained the contention that the person rendering the service was an employee, and not an independent contractor.

The general principles underlying the distinctions between an employee and an independent contractor are stated in the

Mallinger case, and we can do no better at this point than to quote them:

"Before passing to the analysis of the written contract in question, it may be well to examine and analyze the usual legal tests that are adopted by courts in determining whether or not a person classifies as an independent contractor, under the facts and circumstances of a given case. The term has a fairly well-defined meaning under the decisions of many jurisdictions, including our own. An independent contractor, under the quite universal rule, may be defined as one who carries on an independent business, and contracts to do a piece of work according to his own methods, subject to the employer's control only as to results. The commonly recognized tests of such a relationship are, although not necessarily concurrent, or each in itself controlling: (1) The existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or of his distinct calling; (3) his employment of assistants, with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work, except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer. If the workman is using the tools or equipment of the employer, it is understood and generally held that the one using them, especially if they are of substantial value, is a servant."

In the Root case, cited by appellant, the ultimate facts were in dispute and the evidence in conflict. The Workmen's Compensation Act was involved. The finding of facts by the Industrial Commissioner supported the contention that the deceased was an employee. Such finding was binding both upon the trial court and upon us. If it had not been binding upon us, we should have been inclined to the same finding. In that case a few farmers were employed by the agent of the contractor to haul gravel. For that purpose the farmer hitched his team to the equipment of the contractor. The burden of discussion in that case is upon the decisive questions of fact. Counsel for appellant quote copiously therefrom, but inadvertently the

quotation is limited to the language of the Industrial Commissioner, which is incorporated in the opinion itself.

The Mallinger case also involved the Workmen's Compensation Act. The decedent had been employed by the Webster City Oil Company to sell its product at prices fixed by it and to deliver to purchasers such product thus sold, by the use of the equipment and instrumentalities of the Oil Company. The decedent furnished substantially nothing to the enterprise except his personal service. The case was a border-line case, and the decision was by a divided court. That the contract of an employee is one *of service*, whereas the contract of an independent contractor is one *for service*, is the terse differentiation stated in that case. With these pronouncements before us, we turn to the contract of Stover.

This contract was entered into at a time of great activity in highway improvement in this state. One of those improvements consisted of distributing suitable gravel upon the surface of the highway. With the view of getting into the enterprise of hauling gravel, Stover procured for himself complete instrumentalities for that purpose. These comprised a motor truck, equipped with a box or body suitable for carrying an adequate load and for loading and unloading the same. In further aid of his enterprise he built, or procured, a small house, and mounted it upon wheels, whereby he could move it conveniently from one place of work to another. Wherever his job, this little house was occupied by him and his wife as a home. There they lived, boarded, and slept. Eno was a contractor, and was a successful bidder at a letting of a certain project for gravelling a certain highway. He had no equipment of his own for hauling gravel. Instead of procuring any, he set a price per yard per mile, which he would pay to such as chose to accept it. This was the business for which Stover had equipped himself; and likewise many others. The contract between Stover and Eno was oral and very brief. It consisted in an agreement on the price. All else was left to implication and general understanding. Stover maintained his own equipment and carried all the risks thereof. Eno was not chargeable with a dollar of expense for damage or repair. Stover paid for all the motor fuel and oils used by him, whether much or little. None of it was chargeable to Eno. It is urged that, notwithstanding all this, Eno still retained and exercised

a right of control over the service of Stover. This contention is predicated upon the method of the work. There were other haulers besides Stover. The gravel was obtained from a pit owned by Calhoun County. It was a part of the undertaking of Eno that he would load the trucks. He had men and equipment at the pit, whereby the gravel was first gathered into an elevated hopper. The gravel haulers drove their trucks underneath the hopper and received their load and passed on. There was but one hopper at the pit, and therefore only one truck at a time was loaded. This meant that each hauler brought his truck under the hopper in his turn or rotation. The filling of the truck was a momentary task, and the trucks passed under the hopper in procession. In order to get its load, each truck took its place in the procession.

At the place of unloading the gravel, Calhoun County maintained an inspector, who checked every load and kept an account thereof and directed the place of each unloading. This man is known in the record as a "checker". He quit the work at a designated hour every afternoon, and thereby ended the hauling for that day. It was in this sense only that any control was retained or exercised by Eno over the gravel haulers. There was a natural limitation upon the number of loads which Stover could possibly deliver in a day. But he was bound to no number, either great or small. He could haul one load, or several, or none, any day. Eno had no other interest in his work or in his time than to know his yardage and his mileage. We may note at this point that in the Mallinger case, the contract created a fiduciary relation of agency. The employee was under duty, not only to sell the product, but to collect the proceeds of the sale and to account for the same to his principal. He was also in possession of his principal's equipment, for which he was likewise under duty to account and under duty to care and to preserve.

In the case before us it was immaterial to Eno whether the yardage and mileage stipulated for was accomplished by Stover himself, or by some employee of Stover's. This point is illustrated by the contract between Eno and Connors. It was identical with that between Eno and Stover. But Connors did not personally perform it. He employed Gibson. This was acquiesced in as being in accord with the mutual understanding of the

parties. Under this interpretation the contract was one *for service* and not one *of service*.

What is here said, is sufficient to differentiate the case before us from the cases of Root and Mallinger, relied on by appellant. Stover had selected a line of business for the time being, and had equipped himself therefor. He devoted a capital investment thereto and carried the risk incident to the business. In holding that the case is not ruled by the cited cases, we necessarily hold that it is ruled by others of our decisions, which are cited and discussed in the briefs. The question was before us in the recent case of In re Estate of Amond, 203 Iowa 306. In our opinion in that case many authorities are reviewed. No useful purpose could be served by a repetition of the discussion. That case involved the question whether a teamster using his own horses and wagon and delivering coal for a dealer at an agreed price of $.80 per ton was an employee or an independent contractor. We held the latter.

A like question was involved in Norton v. Day Coal Co., 192 Iowa 160. We held that the alleged employee was an independent contractor.

In Pace v. Appanoose County, 184 Iowa 498, the alleged employee was under contract with the defendant county to furnish an engine and himself as operator thereof, in order to draw a grader owned by the county. Compensation at $14.00 a day was agreed on. The personal service was performed in part by the decedent and in part by his employee. We held that he was an independent contractor. We think these cited cases and the discussions therein are quite decisive of the case at bar as to those features of the contract which have been set forth above.

See also Arthur v. Marble Rock, 209 Iowa 280.

II. It remains to consider one other contention urged by the appellant. The contract of Eno with Calhoun County contained the following provisions:

"(1) It is understood that the Contractor for all or any part will furnish all labor, material, equipment, tools, transportation, and necessary supplies, such as may reasonably be required to execute the contract in a satisfactory and workmanlike manner and in accordance with the plans, specifications and terms of the contract."

"(2) The Contractor shall at all times so conduct the work

as not to conflict with any such laws, ordinances or regulations, and shall save the county and its representatives harmless against any claim arising from violation thereof. The Contractor shall carry liability insurance to protect the public from injuries sustained by reason of the carrying on of the work.''

Eno did not in fact carry liability insurance. The appellant is not predicating liability upon breach of his contract in that regard. He urges the point as in the nature of an admission on the part of Eno that all persons who were aiding him in performance of his contract were employees, and not contractors. Giving full weight to the implication contended for, it can go no further than to imply that *Eno had employees* in the performance of his contract. Undisputably he did have many employees. These in the main consisted of his men at the pit, who were working for wages by the day. They were engaged in stripping the surface soil, to lay bare the sand content. They were likewise engaged in operating a crane for the filling of the hopper, and a screen for the purpose of cleaning the gravel. These instrumentalities were the property of Eno. They were operated by employees, to whom he paid stipulated wages. Giving the appellant, therefore, the benefit of whatever admission might be fairly implied by a contract covering liability for the acts of employees, yet it can be deemed to admit no more than that the contractor *had employees*. Moreover, if Eno had given a bond for the performance of the requirements thus made upon him, such bond could be enforced only within its statutory scope. Its penalty could not be absorbed by an action for damages for personal injuries. We so held in Schisel v. Marvill, 198 Iowa 725, and U. S. F. & G. Co. v. Iowa Telephone Company, 174 Iowa 476.

It is our conclusion that Stover was an independent contractor. Eno was, therefore, not liable for his negligence, if any. If Stover was an independent contractor, Connors was necessarily such. Eno could not, therefore, be charged with his negligence. Gibson was the employee of Connors, not of Eno. Appellant has not pressed the alleged liability of Eno for the negligence of Gibson, and we need not discuss it.

In view of our conclusion at this point, we need not consider the question of contributory negligence. The court proper-

ly directed a verdict on the ground here discussed. Its judgment is accordingly—Affirmed.

All Justices concur.