S. E. PAGE, Appellee, v. KOSS CONSTRUCTION COMPANY et al., Appellants.

No. 41441.

NOVEMBER 15, 1932.

REHEARING DENIED APRIL 6, 1933.

Miller, Miller & Miller, and E. K. Jones, for appellants.

O. M. Slaymaker and R. E. Killmar, for appellee.

FAVILLE, J.—United States highway No. 65 extends north and south through the state. In May, 1929, a portion of said highway south of the city of Osceola was being paved. The public was excluded from the portion of said highway under construction by proper signs and obstructions. The necessary trucks for conveying material to the place of construction passed these obstructions, and parties interested in the work did the same.

On the day in question, the appellee was riding in a Chevrolet sedan which was owned and being driven by one Curnes. They were driving in a northerly direction on the portion of the highway that was between the barriers referred to. While so doing, they met a truck moving in the opposite direction. Just what occurred is a matter of conflict in the evidence. In any event, the two vehicles came into collision in such a manner that the appellee received the injury for which recovery in damages is sought in this action.

 The questions of negligence and amount of damages are not involved in this appeal. The vital question concerns the liability, if any, of the appellants or either of them. The truck in question

was being driven at the time by one Kruckenberg. The appellee alleges that at the time of the injury the said Kruckenberg was hauling sand and gravel for the appellants, and while in the discharge of his duties as an employee of the appellants negligently caused the injury complained of. To support his allegation that the driver of the truck was an employee of the appellants, the appellee offered in evidence two written contracts. It appears that the appellant Koss Construction Company had a contract with the proper state authorities for the construction of the improvement in question. On or about April 17, 1929, the Koss Construction Company entered into a written contract with the appellant White. Said contract contains the following provisions:

"Whereas, the Koss Construction Company has a contract with the Iowa State Highway Commission for construction in accordance with plans and specifications, therefore, and in the locations designated in the notice to contractors, the various items of road work awarded the Koss Construction Company on January 8, 1929, known as F. A. 122-B Decatur County, Iowa, F. A. 298 Decatur County, Iowa, and F. A. 33 A. & B., Clarke County, Iowa, said contract, plans, specifications, etc., being included herein by reference and made a part hereof; and the Koss Construction Company is desirous of subletting to C. E. White the hauling work on these projects.

"It is therefore agreed that C. E. White will haul all batches of cement, sand and crushed stone or gravel from plant sites to paving mixer out on road and Koss Construction Company agrees to pay C. E. White for the hauling under this contract at such prices as herein below stated.

"For hauling one batch of cement, sand, and crushed stone or gravel in sufficient quantity per batch for maximum capacity of a 27 E Paving Mixer at 35c per batch per mile for the first mile and 10c per half mile for each succeeding half mile of haul. Payment to be made on the 5th and 20th of each month of the value of all hauling due up to the 1st and 15th day of such month that work is done. Five Cents for each batch during each pay period is to be retained from money due C. E. White by the Koss Construction Company until the work covered by this agreement is completed, this 5c per batch retained is to be paid after the work is completed and C. E. White has given satisfactory evidence that all bills for labor,

materials, supplies, gasoline and oils used on this work have been paid.

"C. E. White agrees to purchase from Koss Construction Company at regular service station prices all gasoline used on this work. Koss Construction Company agrees to maintain at their plant site a gasoline tank and pump for supplying this gasoline. C. E. White also agrees to purchase from Koss Construction Company all oils used on this work, deductions to be made from moneys due each pay day for gasoline and oils.

"C. E. White agrees to furnish sufficient trucks to haul sufficient batches to keep paving mixer operating to full capacity and said trucks also are to be equipped with suitable canvas covers.

"C. E. White agrees to put trucks on the work within three days' notice from the Koss Construction Company and to carry on the hauling work at a rate as specified herein and in event C. E. White fails to maintain sufficient trucks and drivers on the work or if C. E. White becomes insolvent or declared bankrupt or commits any act of bankruptcy or insolvency or allows any final judgment to stand against him unsatisfied, Koss Construction Company shall immediately have full power and authority without violating the contract to take over and complete the hauling, to appropriate or use any or all materials and equipment on the ground that may be suitable or acceptable, to enter into agreement with others for the completion of said contract according to the terms and provisions thereof, or to use such other methods as in its opinion may be required for the completion of said contract in an acceptable manner. For all costs and charges incurred by the Koss Construction Company together with the cost of completing the work under contract C. E. White shall be liable and such costs may be deducted from any moneys due or which may become due C. E. White. In case the expense so incurred by the Koss Construction Company is less than the sum which would have been payable under the contract if it had been completed by C. E. White, then C. E. White shall be entitled to receive the difference, and in case such expense exceeds the sum which would have been payable under the contract then C. E. White shall be liable and shall pay the Koss Construction Company the amount of said excess.

"C. E. White also agrees to furnish the Koss Construction Company before final payment is made with an affidavit to the effect

that all bills for labor, material, supplies, gasoline and oils furnished or consumed in connection with this work have been paid.

"C. E. White agrees to assign and hereby assigns to Koss Construction Company his equity in all trucks engaged in the work to cover the completion of this contract."

Prior to the execution of said contract between the Koss Construction Company and White, to wit, on February 2, 1929, White had made a written contract with said Kruckenberg, the essential portion of which is as follows:

"Whereas the said party of the first part (White) has entered into a contract with paving contractors to haul certain materials from proportioning plants erected at a siding of the railroad, the said materials to be hauled by truck to improve certain specified sections of roadway, said party of the first part desires to rent, hire and procure the services of one or more trucks, said trucks to be equipped with the specified one and one-half yards body, together with 32x6 rear Giant Pneumatic tires, for the purpose of hauling dry concrete mix, from said proportioning plants, located as above described, to points on said roadway to be paved or improved as needed for the construction of said projects.

"Therefore, the said party of the second part hereby agrees, in consideration of the premises and sums hereinafter named, to hire, rent and furnish to the said party of the first part for the purpose aforesaid, one new Ford truck above described, together with the service of driver and maintenance thereof, to haul the said dry aggregate from the proportioning plants to the designated points on said projects. The said party of the second part agrees that in the event of failure to keep, maintain and operate a new Ford truck as above described, uninterrupted, excepting unforseen conditions over which party of the second part has no control, party of the first part shall have the right to cancel contract and take the necessary steps for the purpose of collecting any loss or damage which party of the first part may suffer and party of the second part agrees that his equity in said Ford truck shall be payment of said damages and hereby waives any exemption prescribed by law. And, for the purpose of assuring party of the first part that the truck or trucks belonging to party of the second part will not be taken from party of the first part's project without consent of party of the first part, the party of the second part and heirs hereby on

the date first above written at Des Moines, Iowa, assigns his or their interest and equity in said truck or trucks above mentioned to the party of the first part and in said truck or trucks above mentioned to the party of the first part and on completion of this contract party of the first part hereby agrees to re-assign its interest in said truck to party of the second part. It is agreed that in the event party of the second part is obliged to withdraw his truck from the work described herein for a period of more than one-half day, party of the first part shall have the right to hire a substitute truck in the open market and charge the operating expenses of said truck to the party of the second part. In connection herewith, however, the party of the second part reserves the right to supply the substitute truck during the intervening time, provided the substitute truck is of the same type and proportion as the original equipment.

"It is further agreed and understood that the said party of the first part shall designate the number of hours each day and the number of days each week, including Sunday if necessary, that the aforesaid work shall proceed, and that said party of the second part further agrees that his truck, driver and services thereof, be at the service of said party of the first part exclusively, during the working hours of every day.

"Party of the first part agrees to pay to party of the second part as full remuneration for the hauling and delivering of the said described material in batch form at the rate of 25c for the first mile of haul and 10c. additional for each one-half mile of haul thereafter.

"Ninety per cent of all amounts earned under the terms of this contract shall be paid J. W. Kruckenberg for material hauled up to the night of ............., provided however that party of the first part shall pay forty per cent of the total earned amount to McCarney Motor Co. to be applied on the purchase price of certain Ford truck or trucks purchased by party of the second part from said McCarney Motor Co. of D. M., Iowa, said amounts to be so applied until said truck is paid for in full. In the event party of the first part or the paving contractor furnishes to party of the second part, board, lodging, gasoline or oil, compensation therefor shall be retained by party of the first part from the said earned amount and shall be applied on payment for said board, lodging, gasoline and oil. It is further agreed that party of the first part

retain ten per cent of said total amount earned to be paid by party of the second part upon the expiration of this contract.

"This contract shall continue in force until the completion of the hauling projects of party of the first part or until weather conditions terminate further work.

"Party of the first part retains the right to discharge at any time without notice any driver for incompetency, insubordination, or inefficiency, in which event said driver's contract shall be forfeited and terminated."

I. Under said first-mentioned contract was Kruckenberg, the driver of the truck, an employee of the appellant Koss Construction Company, so that said company could be held liable for the negligent act of Kruckenberg in operating said truck? The written contract fixed the relationship of the Koss Construction Company and White. The Koss Construction Company had no contract whatever with Kruckenberg. We must look to the written contract between the Koss Construction Company and White to ascertain whether or not the Koss Construction Company could be liable to appellee for the negligent act of the driver, Kruckenberg. By its terms, the contract between the Koss Construction Company and White was a contract for subletting to White the hauling work on the project. White was to furnish sufficient trucks to haul sufficient batches to keep the paving mixer operating to full capacity, and said trucks also were to be equipped with suitable canvas covers. The contract was, by its terms, clearly a contract between the Koss Construction Company and White for certain work specified therein, to wit, the hauling of batches of cement, sand, crushed stone, and gravel, from the plant sites to the paving mixer at the improvement. White was to furnish trucks to haul sufficient batches to keep the mixer in operation, and the trucks were to be equipped with suitable canvas covers, evidently for the purpose of protecting the mixture.

We fail to find in this contract any provision whatever by which the Koss Construction Company became an employer of the driver of the trucks operated by White. Obviously, under the contract, White was to furnish the trucks and the drivers thereof. The work which was to be done was the hauling provided for in the contract. The Koss Construction Company had no authority to say whom White should employ as drivers of these trucks. It could make no selection of drivers. It made no payment to White's employees under this contract. It had no power to discharge the drivers of White's

trucks under this contract. As we view it, the contract between the Koss Construction Company and White presents a simple case of the employment of an independent contractor. There is nothing in the contract that indicates in the slightest degree that the Koss Construction Company had any control whatever over the employees of White. White undertook in his contract with the construction company to furnish trucks and do certain work of hauling. Under this contract it made no difference to the Koss Construction Company whether or not White owned the trucks employed in the work or whether he hired others with trucks to carry out his contract. If White perchance hired some driver of his truck who was personally objectionable to the Koss Construction Company, it could not discharge such employee; White alone could do so. White alone employed the drivers of the trucks, and he alone fixed their compensation, under his contract with the Koss Construction Company.

It is often difficult to clearly draw the line of distinction between an employee and an independent contractor. The law clearly recognizes that the relationship of principal contractor and independent contractor may exist, and that that relationship is entirely different from that of employer and employee. The relationship between these parties was fixed by the written instrument, and it was for the court to construe that instrument as a matter of law. Whatever may have been the relation between White and Kruckenberg, the driver of the truck, certainly, under the written contract between the Koss Construction Company and White, the driver of the truck did not become an employee of the Koss Construction Company.

 The trial court overruled the motion of the Koss Construction Company for a directed verdict, and left it for the jury to determine the relationship between the Koss Construction Company and the driver Kruckenberg. This was error under the record in this case. The written instrument fixed the relationship of the parties, and its proper construction was a matter of law for the court, and, under the record, was not a question for the determination of the jury. We do not deem extensive citation of authority essential on this proposition. No two contracts are identical, but the general principles of construction determining the relationship of the parties are well established. As bearing on the question before us, however, see Burns v. Eno, 213 Iowa 881, 240 N. W. 209; Knudson v. Jackson, 191 Iowa 947, 183 N. W. 391; Norton v. Day Coal Co., 192

Iowa 160, 180 N. W. 905; Arthur v. Marble Rock Consolidated School District, 209 Iowa 280, 228 N. W. 70, 66 A. L. R. 718.

II. Did the contract between White and Kruckenberg create the relation of employer and employee so as to render White liable for the negligent act of Kruckenberg, or was Kruckenberg an independent contractor? We must construe the written contract between the parties to determine their relationship. The contract, by its terms, recites that White was engaged in the business of contracting with paving contractors to haul materials from proportioning plants erected at the sidings of railroads to the construction work on roadways. At the time that White made this contract with Kruckenberg, he had not entered into his contract with the Koss Construction Company and did not do so until more than two months afterward. White was, however, engaged in the general business of contracting with paving contractors to haul materials from railroad sidings to the place where paving was being laid on the roadway. He entered into the written contract with Kruckenberg to "rent, hire, and procure the services of one or more trucks, to be used in said business of hauling the dry concrete mix from the proportioning plant at a railroad siding to points on the roadway to be paved". This obviously was to be done at any place where White might secure a contract with the principal contractor for such work, just as he afterward did with the Koss Construction Company. Under the contract with Kruckenberg, it was to continue in force until the completion of the various hauling projects of White, or until weather conditions terminated further work. The contract between White and Kruckenberg provides that Kruckenberg agrees to hire, rent, and furnish to the said party of the first part (White) for the purposes aforesaid (hauling), one new Ford truck, together with the services of driver, and maintenance thereof, to haul dry aggregate from the proportioning plants to the designated points on said project. Under this provision of the contract Kruckenberg undertook to hire, rent, and furnish to White a new Ford truck for use in said work, and the services of a driver for the same, and to maintain said truck. By this provision of the contract, was the relationship between White and Kruckenberg that of employer and employee, or was Kruckenberg an independent contractor? As in the case of the other contract involved in this action, so here the question is one of law as to the legal relationship created by the terms of the contract. It is to be noted that the contract in no way

bound Kruckenberg to personally render any service. He was to furnish one truck and a driver and do the work of hauling material. It was a contract *for* service, not *of* service. If Kruckenberg furnished a truck and a driver and hauled the material, he performed this part of the contract on his part. The driver might be Kruckenberg himself, or it might be an employee of Kruckenberg. This clause did not make Kruckenberg an employee of White.

The contract further provides that, if Kruckenberg fails to keep, maintain, and operate a truck as described, except for unforeseen conditions, White shall have the right to cancel the contract and take the necessary steps for collecting loss or damage which he may suffer by reason of such failure, and the contract provides that Kruckenberg agrees that his equity in the said truck "shall be payment of said damages, and hereby waives any exemption provided by law". The parties had a right to provide for cancellation of the contract upon default on the part of Kruckenberg, and the fact that Kruckenberg agreed that his equity in the truck should be regarded as payment for the damages that White might suffer by Kruckenberg's failure to keep, maintain, and operate the truck uninterruptedly did not create the relationship of employer and employee.

Again in the contract it is provided that "For the purpose of assuring party of the first part (White) that the truck or trucks belonging to party of the second part would not be taken from the party of the first part's project without consent of the party of the first part, the party of the second part assigns his interest and equity in said truck to the party of the first part and on completion of the contract the party of the first part agrees to re-assign his interest in the truck to the party of the second part". Our only concern with this portion of the contract is as to what effect or bearing it may have on the question of the relationship between the parties. Does said portion of the contract establish that the relationship of the parties was that of employer and employee? We think not. The obvious purpose of this clause was to prevent the possibility that the truck in question might be taken from the project at a time when great damage would result to White because of the failure of Kruckenberg to carry out his contract. The business in which White was engaged called for prompt work. It was imperative that suitable trucks be provided to transport the material for the construction of the pavement. The work was of such a character that it could not

lapse or be interrupted, and this clause of the contract was for the protection of White so that Kruckenberg could not arbitrarily quit at any moment in the midst of the busy work and remove his truck from the scene. In this connection it is also to be observed that the contract provides that, if Kruckenberg was obliged to withdraw his truck from the work for more than a half day, White had the right to hire a substitute truck in the open market and charge the expense to Kruckenberg.

The contract further provides that White shall designate the number of hours each day and the number of days each week that the work shall proceed, and Kruckenberg agrees that his "truck, driver, and services thereof" shall be at the service of White exclusively during the working hours of every day. This clause likewise did not establish the relationship of employer and employee. Kruckenberg was to furnish a truck, driver, and services of operating the truck during the working hours of every day to perform the work of hauling. True, he was to have these instrumentalities "at the service" of White "exclusively during the working hours of every day." These instrumentalities (the truck and its driver) were to do the work which White had contracted with the Koss Construction Company should be performed, to wit, the hauling referred to. Under the contract White did not employ Kruckenberg as an individual to render any personal service. Kruckenberg undertook to furnish certain instrumentalities, to wit, a truck and driver, with proper equipment, and use them to carry out certain work for White. We do not think this provision in the contract created the relation of employer and employee.

The contract also provides that White "retains the right to discharge at any time, without notice, any driver for incompetency, insubordination, or inefficiency, in which event said driver's contract shall be forfeited and terminated". It was vital to the very purposes of the contract that White have a certain control over the manner in which Kruckenberg performed his contract. Promptness on the part of the driver of the truck was obviously of paramount importance. Delay in the operations of a truck driver might cause damage and loss in the construction of the improvement. Efficiency and competency were required.

In the case of the truck, the contract provided that, if Kruckenberg failed to keep, maintain, and operate a truck in condition as required by the contract, White had the right to cancel the contract.

So, in the event that the other instrumentality, the driver, was incompetent, insubordinate, or inefficient, White might discharge him and prevent his further work under the contract. The evident purpose was to make it possible for White to insist that both as to the truck and the driver, he should have the power to cancel the contract for inefficiency or incompetency. But it is to be observed that White had nothing whatever to do with employing the driver or fixing his hours of service or his compensation. Kruckenberg could employ one or more drivers for the truck. He could act as driver himself. He alone fixed the compensation to be paid and the time of payment. White was to pay Kruckenberg only on the basis of material hauled at the rate of 25 cents for the first mile of haul and 10 cents additional for each one-half mile of haul thereafter. He was paying Kruckenberg for the completed job. We do not think this clause created the relationship of employer and employee.

Again the contract provides that, in the event White or the paving contractor furnishes "to party of the second 'part, board, lodging, gasoline or oil, compensation therefor shall be retained by party of the first part from the said earned amount and shall be applied on payment for said board, lodging, gasoline and oil." This simply was a provision to protect White or the paving contractor for things so furnished *"in the event"* that either of said parties had furnished the same to Kruckenberg. Under the contract, however, Kruckenberg was alone to provide board and the named materials for the work. He could procure the same wheresoever he saw fit; the only condition in the contract was that *if* he procured them from White or the paving contractor, the payment therefor should be deducted from what White would be owing him under the contract.

We have analyzed the various provisions of this contract as they might bear upon the question of the proper construction to be placed thereon. Cases construing other contracts similar in terms are of little avail. Cases arising under workmen's compensation statutes, where the terms "employer" and "employee" are given legislative definition for the purposes of such statutes, are not controlling in a case arising wholly outside the particular statute.

In the recent case of Burns v. Eno, 213 Iowa 881, 240 N. W. 209, we had occasion to review our previous holdings on such a question as is now before us. It is unnecessary that we repeat the discussion so recently had. We therein pointed out some of the

distinguishing characteristics between a contract creating the relation of employer and employee and one where the party involved was an independent contractor. We laid stress on the fact of a distinction between a contract *for* service and a contract *of* service.

In the case at bar, we construe the contract between White and Kruckenberg as a contract *for* service and not a contract *of* service. We hold that Kruckenberg was an independent contractor and not an employee of White. Such being the case, the court erred in not sustaining White's motion for a directed verdict.

In view of our conclusion on this branch of the case, other errors relied upon for reversal become immaterial.

For the reasons pointed out, the judgment is reversed.

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.