MEARL W. SCHRIVER, Appellee, v. J. S. MCLAUGHLIN & SONS, Employer, and IOWA MUTUAL LIABILITY INSURANCE COMPANY, Insurance carrier, Appellants.

No. 44761.

NOVEMBER 21, 1939.

Senneff & Senneff, for appellee.

Carl F. Jordan, for appellants.

MILLER, J.—This is a proceeding under the Workmen's Compensation Act, Code 1935, section 1361 et seq., wherein the claimant seeks workmen's compensation from the defendants, employer and insurance carrier, for injuries received while engaged as a truck driver on a paving project in Floyd county. The alleged employer was the general contractor on the project. Its answer was a general denial. While the matter was pending before the commissioner on review, an amendment to the answer was filed asserting that the compensation rate should be computed pursuant to subparagraph 6 of section 1397 of the Code. The board of arbitration awarded compensation. On appeal to the commissioner, the award was sustained and ordered paid. The district court affirmed the decision of the industrial commissioner. On appeal to this court, appellants assert three assignments of error.

I. Appellants' first assignment of error is based upon the contention that the commissioner exceeded his powers in his consideration of an instrument which had been identified as Exhibit 8. Appellants' claim is that only a part of Exhibit 8 was offered in evidence, and that many portions, which were not offered in evidence, were considered by the commissioner and in large measure constituted the basis for his decision.

In the hearing before the arbitration board, the principal contention on the part of the defendants was that the claimant was not an employee of J. S. McLaughlin & Sons, but was either

an employee of his brother-in-law, A. T. Taylor, or an independent contractor. Claimant was injured approximately one week after he commenced work on the project. The circumstances, under which he undertook to operate a truck in connection with the hauling of crushed rock and gravel, were somewhat indefinite. Taylor owned three trucks and he brought them to the job. Taylor drove one of them, claimant drove one, and claimant's brother drove the third one. Taylor testified that claimant ran his own chance of getting a job. There appears to have been no definite contract between Taylor and claimant. The testimony of Taylor and the defendant's superintendent, Momyer, was to the effect that, in engaging trucks and truck drivers, defendant undertook to act in accordance with the regulations established for the project. Many pages of the transcript, which has been certified for our examination, are devoted to testimony concerning the application made by defendant of the rules and regulations governing the project. In connection with this testimony, defendants identified and introduced in evidence, as Exhibit 9, the contract with the Highway Commission. Claimant made no objection to its introduction. It states that the project was No. FA-271-ABC, and is for paving 7.043 miles of primary road No. 14 from primary road No. 147 north and east into Charles City in Floyd county, Iowa. This contract obligated the Iowa State Highway Commission to pay defendant $173,867.65, "payable as set forth in the specifications constituting a part of this contract." The contract further provided:

"Said specifications and plans are hereby made a part of and the basis of this agreement, and a true copy of said plans and specifications is now on file in the office of the Iowa State Highway Commission. * * * It is mutually understood and agreed by the parties hereto that the notice to bidders, instructions to bidders, proposal, the specifications for FA Project No. 271-ABC, Floyd County, Iowa, the within contract, the contractor's bond, and the general and detailed plans are and constitute the basis of contract between the parties hereto."

Exhibit 8 is entitled, "Project No. FA-271-ABC, Floyd County, Iowa, Notice to bidders, special provisions, proposal form and estimate for paving 7.043 miles of Primary Road No.

14 from Primary Road No. 147 north and east into Charles City'' and also ''Iowa State Highway Commission's standard specifications for construction work on the primary road system, series of 1937, supplemented by special provisions of May 1, 1937, Divisions I and II.'' Exhibit 8 was first produced and identified and considerable testimony was elicited in reference to certain pages of the exhibit as the same pertained to the regulations in reference to contracts of employment and hours of work to be performed on the project. Exhibit 9 was then identified, offered in evidence, and received without objection. Further inquiry was had in reference to Exhibit 8 and eventually it was offered as follows:

''Mr. JORDAN. We offer in evidence those parts of Defendants' Exhibit 8, which have been specifically referred to. We also offer Defendants' Exhibit 9.''

Claimant made no objection.

While Exhibit 9 was re-offered at the time that Exhibit 8 was offered, as above-stated, Exhibit 9 was already in evidence and specifically referred to Exhibit 8 *in its entirety*. From the position now taken by appellant, it apparently was the intention to introduce in evidence only those portions of Exhibit 8, which had been called to the attention of the witness that had produced and identified it. However, the commissioner interpreted the offer as an offer of the entire exhibit because, as heretofore pointed out, the *entire exhibit* was *specifically referred* to and incorporated in Exhibit 9, which was admitted in evidence before Exhibit 8 was offered. We think that the commissioner was warranted in such interpretation.

Section 1441 of the Code provides as follows:

''While sitting as a board of arbitration, or when conducting a hearing on review, or in making any investigation or inquiry, neither the board of arbitration nor the commissioner shall be bound by common law or statutory rules of evidence or by technical or formal rules of procedure; but they shall hold such arbitrations, or conduct such hearings and make such investigations and inquiries in such manner as is best suited to ascertain and conserve the substantial rights of all parties thereto.''

Whatever might be the rule under common law or statutory

rules of evidence, or technical or formal rules of procedure, we think that the above statute authorized the commissioner to proceed in the manner in which he did, and that he did not act in excess of his powers in referring to and relying upon the provisions of Exhibit 8, about which appellant now complains. There is no merit in the first assignment of error.

II. Appellants' second assignment of error asserts that there was not sufficient competent evidence in the record to make the order or decision appealed from. Subparagraph 4 of section 1453 provides that any order or decision of the industrial commissioner may be modified, reversed or set aside if there is not sufficient competent evidence in the record to warrant the making of the order or decision. This was one of the grounds for the appeal to the district court. Appellants' argument in this court is largely based upon the contention that, in determining whether or not there was sufficient competent evidence in the record to warrant the decision of the industrial commissioner, the district court and this court should disregard those portions of the aforesaid Exhibit 8 which appellant claims were improperly considered. As above pointed out, we are of the opinion, and hold, that Exhibit 8 was properly considered in its entirety. With the exhibit so considered, we are convinced that the district court properly sustained the commissioner.

The specifications, Exhibit 8, provided among other things, as follows:

"The contractor shall perform with his own organization and with the assistance of workmen *under his immediate superintendence,* work of a value not less than 80 per cent of the value of all work embraced in the contract. * * *

"If any bidder shall state in his proposal the particular item or items of work which he proposes to sublet and shall name therein the subcontractor to whom he proposes to sublet such work in the event of an award to him, such item or items of work may be performed by such contractor notwithstanding the 80 per cent limitation above mentioned, provided that the subcontractor named in the proposal is a contractor of recognized standing, has a record of satisfactory performance, and the work proposed to be sublet does not constitute the major item or items of work embraced in the contract. * * *

"No portion of the contract shall be *sublet*, assigned or otherwise disposed of except *with the written consent* of the contracting officer or his authorized representative. * * *

"The owners of hired trucks and teams shall be subject to the regulations as to employment, wages, hours of employment and conditions of employment applicable to other labor on the project. Relief drivers will be secured as other labor is secured, paid by the contractor."

The specifications further provided that truck drivers should be classified as unskilled labor and should be paid a minimum wage of 50 cents per hour. The specifications also provided:

"Labor shall not be permitted to work more than forty hours in any one week, except that working time lost because of inclement weather or shutdowns during the period of employment in any one week may be made up during the succeeding three weeks."

Trucks were permitted to operate 60 hours a week. When the driver of a truck had worked 40 hours during the week, it was necessary to put on a new driver for the balance of that week.

The specifications also provided that laborers should be employed from certain lists furnished by the National Re-employment Office, but the contractor might, under certain circumstances, put men to work who were not on such lists. It is claimed by appellants that the claimant secured his employment by falsely representing that he owned the truck when, in fact, it was owned by Taylor. Taylor, however, testified that, several days before claimant commenced work on the project, he informed defendant's superintendent, Momyer, that he, Taylor, owned the three trucks. The testimony upon which appellants rely is controverted by testimony offered by the claimant. This constituted a disputed question of fact which the commissioner decided adversely to appellants. We cannot disturb such finding under the record herein. Section 1452 of the Code provides that, in the absence of fraud, the findings of fact made by the industrial commissioner within his power shall be conclusive. This statute has been construed by us on numerous occasions. An illustrative case is that of Reid v. Reid, 216 Iowa 882, 886, 249 N. W. 387, 389, wherein we state:

"It is the ordinary rule in all cases of this character that, where there is a fact found by the industrial commissioner on substantial, competent, supporting, and conflicting testimony, such finding is conclusive on the courts. Among other cases, see Belcher v. Des Moines Electric Light Co., 208 Iowa 262, 225 N. W. 404; Norman v. City of Chariton, 206 Iowa 790, 221 N. W. 481; Smith v. Marshall Ice Co., 204 Iowa 1348, 217 N. W. 264; Hinrichs v. Davenport Locomotive Works, 203 Iowa 1395, 214 N. W. 585."

Before appellants could establish their contention that claimant was an employee of Taylor rather than defendant, it is obvious that it was necessary to establish that Taylor was a subcontractor on the job. As above pointed out, to become a subcontractor, it was necessary that the Highway Commission agree in writing to his status as such. There is no evidence of any such agreement nor was any attempt made by Taylor or the defendant to establish Taylor as a subcontractor. Taylor, claimant, and claimant's brother, all three applied individually for work, apparently each on the same basis. The commissioner was clearly warranted in holding that Taylor was not a subcontractor on the project.

To establish claimant as an independent contractor, it was likewise necessary to show that he was a subcontractor and not an employee. The record shows no effort on the part of either claimant or the defendant to establish such a status. The record shows that defendant was endeavoring to comply with the rules and regulations applicable to the project. We must assume that they acted in good faith. On such assumption, under the record herein, the commissioner was clearly warranted in holding that defendant accepted claimant as its employee.

Appellants rely upon the cases of Burns v. Eno, 213 Iowa 881, 240 N. W. 209, and Page v. Koss Const. Co., 215 Iowa 1388, 245 N. W. 208. Neither case is in point. In the Burns case, Eno was the general contractor on the project. He sublet the hauling of the material to one Conner, for whom one Gibson drove a truck belonging to Conner. The truck that Gibson was operating was involved in an accident and this court held that Gibson was not an employee of Eno. The case would be in point were appellant's contentions in reference to the facts established, but, as we find the facts other than as contended for, the case

is not in point. The same is true in the Page case, where the Koss Construction Company was the general contractor, and had sublet the hauling of the material to one C. E. White, for whom one Kruckenberg was operating the truck at the time of the accident, and this court held that said Kruckenberg was not an employee of the Koss Construction Company.

In determining whether or not claimant was an employee as distinguished from an independent contractor, it was necessary for the commissioner to determine whether or not claimant's contract was one of service or one for service. We state, in Mallinger v. Webster City Oil Co., 211 Iowa 847, 851, 234 N. W. 254, as follows:

"An independent contractor, under the quite universal rule, may be defined as one who carries on an independent business, and contracts to do a piece of work according to his own methods, subject to the employer's control only as to results. The commonly recognized tests of such a relationship are, although not necessarily concurrent, or each in itself controlling: (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or of his distinct calling; (3) his employment of assistants, with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work, except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer."

Under the rules above-quoted, the commissioner was warranted in holding, under the record herein, that claimant's arrangement with defendant was a contract of service, as distinguished from a contract for service.

Appellants rely upon our holding in the case of Root v. Shadbolt & Middleton, 195 Iowa 1225, 193 N. W. 634. The situation presented to this court in that case is somewhat analogous to that presented by the record herein. In concluding our opinion in that case, we state, 195 Iowa at page 1237, 193 N. W. at page 639:

"In many cases, we have held that the finding of the com-

missioner stands upon the same footing as that of the verdict of a jury or a court, and that it is not to be set aside if there is evidence upon which the finding can rest. Whether or not Root was an independent contractor, and whether or not Twigg was an independent contractor and Root his employee, or whether Twigg was the employee and foreman on the job for Shadbolt & Middleton, were ultimate facts to be determined, and were decided in favor of claimant by the committee of arbitration, the commissioner, and the court.

"We reach the conclusion that the findings and order of the commissioner are sustained by the proof."

We are of the opinion, after a careful examination of some 184 pages of transcript, that the same result should be reached herein. There is no merit in the second assignment of error.

III. Appellants' third assignment of error is based upon the assertion that the claimant was engaged in a business or enterprise which customarily shuts down and ceases operation during a season of the year, and, accordingly, the compensation should have been computed pursuant to the provisions of subparagraph 6 of section 1397 of the Code.

In the proceedings before the arbitrators, counsel for claimant stated that Mr. Jordan, as counsel for the defendants, was willing to stipulate and agree that the rate of compensation should be $11.53 per week, and that claimant was willing to accept that as a proper figure, and would so stipulate. To this Mr. Jordan replied that he would so stipulate and agree unless it should appear, as he thought it would, that the claimant was engaged in employment, in which it was the custom to work for part of the year only. Except for this reservation, he agreed to the stipulation.

On cross-examination, the claimant testified that, from his experience as a truck driver, he had learned that construction companies shut down part of the year, for the winter months; they shut down in the fall, usually about November, and start up about April or May. On re-direct examination, claimant testified that he worked the whole year round as a truck driver. This testimony was objected to by counsel for appellants, counsel stating, among other things:

"But if plaintiff's theory of the case is correct, then he apparently was working for a company whose custom it was to

operate but only a part of the year; and if that is true, then it wouldn't make any difference here so far as we are concerned if he worked every day of the year for some one else during the time that we were shut down according to our custom.''

In response to such objection, the following conversation took place:

''MR. BLISS: What is the fact as to that, do you know?

''MR. JORDAN: Well, frankly, I don't; I'll find out if you want me to do so.

''MR. BLISS: Well, perhaps the custom of others wouldn't be material.

''MR. JORDAN: I believe that's right; it would just be a question of whether it was the custom of *our company* to work all the year round, or otherwise.

''MR. WOODCOCK: Well, wouldn't it be true, that anything other than the year around rule would be a matter of special defense, if you can call it that, and—

''MR. JORDAN: I think so, yes sir; and that we would have to *plead* it and *prove* it.

''MR. WOODCOCK: And it isn't pleaded here, at least not yet?

''MR. JORDAN: Not yet, no sir.''

The record shows that counsel for the claimant acquiesced in and relied upon the position so taken by counsel for appellants. Appellants did not amend their answer and introduced no evidence after taking the position above reviewed. The arbitration board awarded compensation at the rate of $11.53 per week and apparently relied upon the stipulation of counsel and the position taken by appellants' counsel in reference to the burden of proof.

On review before the commissioner, appellants amended their answer and asserted:

''That if the claimant-plaintiff was an employee of the defendant at the time of his injury, the defendant, at the time of the injury, was engaged in a business or enterprise which customarily shuts down and ceases operations during a season of each year, and the *number of days*, which it is a custom of the *defendant* to operate instead of three hundred (300), should be taken as the basis for computing the annual earnings of the

claimant, if any sum whatever is allowed to him, all as provided in Paragraph Six of Section 1397 of the Code of Iowa.''

However, appellants offered no evidence whatever to show what the custom was in reference to appellants' operations. The only evidence upon which appellants now rely is the testimony of the claimant to the effect that construction companies customarily shut down for the winter months. In passing upon this status of the record, the commissioner states:

''It may be said that this may be sufficient to show what construction companies generally do in so far as the work applies to constructing a concrete slab on a highway, but what construction companies in general may do is not sufficient to show what the *defendant* did which is the *important* factor.''

In the recent case of Polich v. Anderson-Robinson Coal Co., 227 Iowa 553, 288 N. W. 650, we have construed subparagraph 6 of section 1397 of the Code exactly as the commissioner construes it in the above language, namely, that the statute applies only to the custom of the particular employer involved, and that the custom of other employers engaged in like activity is immaterial.

The commissioner also held that the burden of proof on this issue rested upon the defendant. In the Polich case, we declined to pass upon the question, which party had the burden of proof under the record there made. However, under the record here made, particularly when considered with the provisions of section 1441 of the Code above-quoted, we hold that the appellants voluntarily assumed the burden of proof, failed to sustain it, and, accordingly, there is no merit in the third assignment of error.

Since we find no merit in the assignments of error presented for our consideration herein, the judgment is affirmed. —Affirmed.

OLIVER, C. J., and SAGER, HALE, HAMILTON, RICHARDS, and STIGER, JJ., concur.

BLISS, J., takes no part.