EQUITABLE LIFE INSURANCE COMPANY, Appellant, v. IOWA EMPLOYMENT SECURITY COMMISSION et al., Appellees.

No. 45900.

FEBRUARY 17, 1942.

Henry & Henry, for appellant.

J. Charles Crawley, Homer M. Lyon, and George Finch, for appellee Iowa Employment Security Commission.

OLIVER, J.—This case concerns the eligibility of John C. Boysen to benefits under Iowa Employment Security Law, Chapter 77.2, Code of Iowa, 1939. The material facts are not in dispute, the question being whether or not the service rendered by Boysen was "agricultural labor" within the purview of section 1551.25(G), Code of Iowa, 1939, which provides: "* * * 7. The term 'employment' shall not include * * * (d) Agricultural labor."

Equitable Life Insurance Company of Iowa, through foreclosure of mortgages or deeds in lieu thereof, had secured a number of farms which, in obedience to Code sections 8735 and 8736, it was trying to sell as rapidly as possible and in the meantime was leasing to various tenants. To make these farms more rentable and salable, the Equitable engaged a crew of men which went from farm to farm making repairs, improvements and replacements of buildings thereon. From 1934 to 1940, claimant, Boysen, had worked for the Equitable as a member of such crew, being paid by the hour. His work was principally that of a carpenter, consisting of constructing houses, barns, cribs and other buildings upon the farms and repairing and improving old buildings thereon. He also worked at excavating for several foundations, putting in the foundations, and a few odd jobs of painting. His work did not include tilling or cultivating the soil or harvesting crops or the building of fences.

January 31, 1941, Boysen filed a claim for unemployment compensation benefits, which was heard by the Iowa Employment Security Commission on March 28, 1941. On July 29, 1941, the Commission decided the issues in favor of claimant, holding that his service was "employment" and was not "agri-

cultural labor". To review said decision, Equitable Life Insurance Company of Iowa commenced this action in district court under Code section 1551.12. Upon trial, the district court affirmed said decision. Equitable Life Insurance Company of Iowa has appealed. The case turns upon the interpretation of the term "agricultural labor" as used in Iowa Employment Security Law.

The Federal Social Security Act became effective in 1935. In February 1936, Federal Regulations 90 [§402.6, Title 20, Code of Federal Regulations] were promulgated by the United States Treasury Department, in which "agricultural labor" was defined as follows:

"Art. 206(1). Agricultural labor.—The term 'agricultural labor' includes all services performed—

"(a) By an employee, on a farm, in connection with the cultivation of the soil, the raising and harvesting of crops, or the raising, feeding, or management of live stock, bees, and poultry; or"

(b) refers to processing and other matters not here involved.

Iowa Employment Security Law, then entitled Unemployment Compensation Law, took effect in December 1936. On April 5, 1937, the Federal Bureau of Internal Revenue published a ruling known as S. S. T. 125, C. B. 1937-1, 397, concerning "agricultural labor" as used in the Social Security Act and Regulations 90, in part, as follows:

"Where the nature of the service is such that it might properly be said of the individual performing it that he is pursuing a special trade, calling, or occupation not closely connected with agriculture, the service does not constitute 'agricultural labor,' even though the service may be performed on a farm by an employee of the owner or tenant thereof. Typical of such services are those performed by a bookkeeper, stenographer, carpenter, mechanic, or engineer. Services of this nature are not agricultural even though pertaining to agricultural pursuits."

Shortly thereafter the Iowa Unemployment Compensation Law was amended and reenacted and became effective by publication May 20, 1937. On August 18, 1938, Iowa Commission Regulation No. 25, defining "agricultural labor," was promulgated, substantially in the language of Federal Regulations 90. In April 1939, Iowa Code section 1551.25 (G) (7) was amended by the legislature but the exception "agricultural labor" remained unchanged. On August 10, 1939, the Federal Social Security Act amendments of 1939, effective January 1, 1940, were enacted by Congress. It was therein provided in part that "agricultural labor" includes all service performed:

"In the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment * * * if the major part of such service is performed on a farm." 53 Stat. at L. 1377.

September 12, 1940, United States Treasury Department issued Regulation 107, which defined "agricultural labor" in accordance with said amendments.

May 15, 1940, Iowa Commission Regulation No. 25a was adopted, effective as of January 1, 1940, defining "agricultural labor" in accordance with said amendments to the federal statutes. April 2, 1941, Regulation No. 25a was rescinded by the Commission as of the date of its adoption, and Regulation No. 25 was continued in full force and effect from the date of its original adoption. The language of the exception "agricultural labor" found in the original federal act was employed in the original Iowa statute and has since remained unchanged therein.

In argument appellees refer to certain correspondence which we do not find in the record.

■ What meaning did the legislature intend to ascribe to the term "agricultural labor" at the time of the passage of the Iowa law in December 1936, and its reenactment in May 1937? At said times the legislature had before it the original federal act and presumably was cognizant of the interpretations placed thereon by the government agencies in charge of its

administration. Clearly, under Regulation 90, then in effect, one whose sole service was the construction and repair of farmhouses and other buildings on farms was not engaged in "agricultural labor" within the exemption of the federal act. In Woods Bros. Const. Co. v. Iowa Unemployment Comp. Com., 229 Iowa 1171, 1175, 296 N. W. 345, 347, this court interpreted the language of another exception in Code section 1551.25(G). We quote therefrom:

"In 1936 and prior to the enactment of the Iowa law the federal treasury department promulgated and published Regulation 90 * * * which interpreted and defined the phrase 'officers and members of a crew of a vessel' contained in the federal law as follows: * * *.

"The state law does not define the scope and meaning of the words 'member of the crew' as used in section 1551.25, supra. * * *.

"While the construction of the phrase in the federal act by the treasury and bureau of internal revenue is not binding on this court, it is entitled to great weight in determining the construction to be given the same phrase in the subsequent Iowa enactment. [Citing authorities and quoting therefrom.] * * *

"In construing the phrase we may consider the history of the legislation, the facts that the Iowa Unemployment Compensation Act was adopted as a consequence of and in conformity with the federal act and after the publication of federal Regulation No. 90 and contained the identical exception as the federal act.

"In H. Duys & Co. v. Tone, 125 Conn. 300, 308, 5 A. 2d 23, 26, the court, in construing parallel exemptions in the Federal Social Security and the State Unemployment Compensation Acts, and after referring to the report of the special commission, said: 'In so utilizing them we are justified in assuming that the commission was cognizant and took account of not only the provision of the federal act which was "paralleled" but also the federal regulation defining the term "agricultural labor" which had been promulgated the preceding February, and that it, and the Legislature in adopting the provision, con-

templated and intended a like meaning as attaching thereto.' ''

Appellant relies upon statements in United States v. Turner Turpentine Co., 5 Cir., Ga., 111 F. 2d 400, to the effect that the Federal Social Security Act Amendments of 1939 merely interpreted and clarified the original term ''agricultural labor'', as used in the Federal statute. However, it should be noted that Report No. 728 of the House Ways and Means Committee in the first session of the Seventy-sixth Congress states in part, with reference to the proposed amendments to the definition ''agricultural labor'':

''Your committee believes that greater exactness should be given to the exception and that it should be broadened to include as 'agricultural labor' certain services not at present exempt, as such services are an integral part of farming activities.''

In Christgau v. Woodlawn Cemetery Assn., 208 Minn. 263, 281, 293 N. W. 619, 627, the court considered the effect of another subsection of the Federal Amendments of 1939 upon the definition ''agricultural labor'', and said:

''Our state regulation is identical with that of the federal regulation adopted under the federal 1935 act, as are many of the regulations of other states. These regulations have been uniformly sustained as proper interpretations of the statutes involved. * * *

''The amendment discloses an intention to continue the statute in part and to change it in part. There was not only clarification, but change of meaning. Definition so far as it was in the language of the regulation approved and adopted the regulation and the prior administrative construction of the 1935 act. Thus it clearly appears that both the legislative and executive interpretation of the act were in accord.''

To the same effect is Unemployment Compensation Division v. Valker's Greenhouses, 70 N. D. 515, 522, 296 N. W. 143, 146, in which the court said:

''Our attention has been called to the fact that congress amended the Social Security Act in 1939 so as to bring green-

houses within the exemption applicable to employers of agricultural labor. U. S. C. A. title 42, Section 409 (1). The change wrought by congress in the Federal Act is an amendment and not merely a legislative interpretation of the language used in the original enactment. Christgau v. Woodlawn Cemetery Assn., supra.

"The language employed by the North Dakota legislature is the same as that used by congress in the original act. Should it be advisable, as the defendant argues, to bring the North Dakota Statute in accordance with the Federal Social Security Act, the function of so doing properly belongs to the legislature which may by amendment bring greenhouses within the purview of the exemption as did congress."

Cowiche Growers v. Bates, 10 Wash. 2d 585, 604, 605, 117 P. 2d 624, 632, 635, passes upon the effect of an amendment adopted by the Washington legislature of 1941, "which contains almost the exact words of the 1939 amendment to the Federal Social Security Act." It was there contended that the 1941 act was a binding interpretation by the Washington legislature as to what was meant by the term "agricultural labor" in former acts, but the court said:

" * * * the 1941 act is purely an amendment of the 1939 [state] act, and cannot be considered as interpretative or explanatory of either the 1937 or 1939 act."

The court further said:

"This act does not purport to be retroactive, and cannot therefore be operative before its effective date."

The Cowiche case also discusses at length some other propositions referred to in the briefs herein, and cites and discusses many authorities bearing thereon.

It does not appear that the congressional amendments subsequent to the passage of the Iowa law may be said to have much bearing upon the previously expressed intent of the Iowa legislature. In this connection, the failure of the Iowa legislature, at its 1941 session, to amend the Iowa Act

to conform to the congressional amendments of 1939, is entitled to some weight.

That the Iowa legislature may determine what shall constitute employment subject to taxation without regard to existing definitions or categories and that it is not required to conform in every respect to the national ideology upon the subject as expressed in the Acts of Congress, is well settled. Unemployment Compensation Com. v. National L. Ins. Co., 219 N. C. 576, 14 S. E. 2d 689; Brannaman v. Richlow Mfg. Co., 106 Colo. 317, 104 P. 2d 897.

And in the language of the trial court, which we approve, the court should not ''write into the previously existing Iowa statute the congressional enactment of 1939. If the court may do this, then as time goes on and the courts decide, future acts of Congress pertaining to this or other phases of the law will become part of state statute, with resultant further departure from the legislative enactment.''

And had the Iowa legislature itself attempted to give Congress authority to bind the state by acts to be passed in the future affecting the disposition of funds appropriated under the Iowa Employment Security Law such attempt would have been of doubtful validity. Cowiche Growers v. Bates, supra.

Appellant relies upon decisions in workmen's compensation cases as sustaining its position. In Sylcord v. Horn, 179 Iowa 936, 162 N. W. 249, 7 A. L. R. 1285, the statute provided that the act should not apply to any ''farm or other laborer engaged in agricultural pursuits.'' The court held that an employee operating a corn shredder for one who went from farm to farm operating said machine for profit was ''a farm laborer or other laborer engaged in agricultural pursuits.'' The statute interpreted in Taverner v. Anderson, 220 Iowa 151, 154, 261 N. W. 610, 611, excepted '' 'Persons engaged in agriculture, in so far as injuries shall be incurred by employees while engaged in agricultural pursuits or any operations immediately connected therewith * * *.' '' In that case an employee of a farmer was engaged in operating a sorghum mill upon the farm, and assisted in the cutting of the sugar cane and hauling it to the machine. He was held to be within the exception.

In Criger v. Mustaba Inv. Co., 224 Iowa 1111, 1115, 276 N. W. 788, 790, the claimant made building repairs upon various farms of his employer and also had certain supervisory duties over the farms. He was held to be within the exception of the statute to wit: one "engaged in agriculture or in agricultural pursuits, or any operations [immediately] connected therewith."

Under the same statute it was held in Trullinger v. Fremont County, 223 Iowa 677, 683, 273 N. W. 124, 127, that a county highway employee, who, under orders of the board of supervisors, was engaged in operating a county road grader in constructing a silo on a farm for the benefit of the owner thereof was not within the exception of that statute. In that case the court said:

"Our views are so aptly expressed in Guse v. Wessels et al., 270 N. W. 665, 666, decided on January 5, 1937, by the supreme court of Nebraska, that we quote at some length:

" ' * * * a farm laborer does not step out of his own part while doing carpenter work for his farmer employer in the repair of farm buildings. Neither does the carpenter who comes onto the farm for the job of carpentry and nothing more. One continues a farm laborer and the other does not become one.' Peterson v. Farmers' State Bank, 180 Minn. 40, 230 N. W. 124."

It may be observed that none of the work done by claimant in the case at bar was incident to ordinary agricultural labor. Such service was more incident to the business of the insurance company of preparing the farms for early sale and in the meantime renting them to better advantage.

We are not called upon to determine nor do we intimate whether or not the claimant in this case is within the exception of the Workmen's Compensation Law. It should be borne in mind that the language of the exception in the Iowa workmen's compensation statutes differs from that involved in the case at bar, and that the exceptions contained in the workmen's compensation statutes interpreted in the later Iowa cases appear to be broader than the exception here in controversy. And in the quoted language of Woods Bros. Const. Co. v. Iowa Unem-

ployment Comp. Com., supra, at page 1180 of 229 Iowa, page 350 of 296 N. W.:

" 'We find little aid in considering the use of the term * * * in other statutes having other purposes.' "

See also H. Duys & Co. v. Tone, supra.

So in the case at bar, the result of the excursion into the workmen's compensation field may be said to be largely negative. However, those authorities are not irreconcilable with a holding that one engaged solely in repairing and constructing farm buildings for the owner of various rented farms is not engaged in "agricultural labor" as that term is used in the Iowa Employment Security Law.

Nor in the determination of legislative intent do they tend to counterbalance the weight which should be given to the administrative construction of the borrowed language of the Federal Act made prior to the passage of the Iowa law, and followed by the Iowa Employment Security Commission.

It is our conclusion that the interpretation of the statutory term "agricultural labor" as made by the Iowa Employment Security Commission in Regulation 25 (Federal Regulations 90) is the proper interpretation thereof. Claimant's employment was not "agricultural labor" as therein defined and he was entitled to benefits as an employee. That was the decision of the commission. It was affirmed by the judgment of the district court.

Wherefore, the judgment is affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.