29461.   JOHNSON *v.* HUIET, commissioner.

Decided July 16, 1942.

*Dotson & Dotson,* for plaintiff.

*A. L. Henson, Clifford Walker, Otis L. Hathcock,* for defendants.

Stephens, P. J.   Mrs. E. C. Johnson instituted in the superior court of Fulton County suit against Hon. Ben T. Huiet, as commissioner of the department of labor of Georgia, in which she excepted to certain findings of the decision of the board of review provided for under the unemployment compensation law wherein the board sustained the finding of the appeal referee that Lloyd Jones had been employed by the plaintiff, and as such employee, Jones was entitled to recover of the plaintiff, Mrs. E. C. Johnson, benefits payable under the Georgia unemployment compensation law.   Under the pleadings and evidence in the superior court the case resolves itself to a determination of only two questions.   One is whether the plaintiff herself operated the moving-picture theatre at which Jones was an employee, or whether this theatre was operated by a person other than Mrs. Johnson by the name of A. J. Rozetta.   The other question is whether, if Mrs. Johnson operated the theatre she, in connection with this theatre and a furniture store and pool-room which she operated, employed at least eight employees.   The judgment of the board of review was to the effect that Mrs. Johnson was the employer of Jones, that she employed at least eight employees, and that Jones was entitled to the benefits provided under the act.

It appears conclusively from the evidence that Mrs. Johnson operated the pool room and the furniture store with a number of employees aggregating at least five. It also appears that if she was the operator of the moving-picture theatre she employed there at least three persons. The evidence therefore is sufficient to authorize a finding that if Mrs. Johnson operated the theatre she employed eight persons.

There was adduced on the trial evidence substantially as follows: that Mrs. Johnson owned the picture show; that Jones worked there; that, according to the testimony of Mrs. Johnson and Rozetta, Mrs. Johnson leased the picture show to Rozetta, and he operated it under a license in his own name under an oral rental contract by which he was to pay Mrs. Johnson $25 per week; that Mrs. Johnson's daughter, Miss Julia Johnson, obtained from Rozetta a concession to sell candy, etc., in the lobby of the theatre; that another lady relative of Mrs. Johnson, Miss Ellen Johnson, was the cashier seller of tickets; that the electric lights, heat, and water were furnished to Rozetta, and he did not have to pay therefor; that the cost of lights amounted to $10 or $15 a week, and the water about $3, besides the cost of the heat; that, as appears from the testimony of Mrs. Johnson, Rozetta had never paid her any rent; that Jones was "fired" by Mrs. Johnson and not by Rozetta; that while Jones worked at the theatre Mrs. Johnson gave orders and directions around the picture show and told Jones what to do; that she and her daughter took charge of the money which was due Jones for his work at the theatre, and Mrs. Johnson continuously, from time to time, paid Jones his salary or wages; that Mrs. Johnson herself told Rozetta, while the theatre was being operated under this arrangement, that he was going to work whether he wanted to or not, and that she told Jones to go on to work, that she wasn't going to put Rozetta on again for two weeks. There was also evidence that the moneys Rozetta collected in the operation of the show were turned over to Mrs. Johnson's uncle. The ultimate destination of the proceeds of the operation of the show, if any were left over the expenses, does not appear. Rozetta testified that out of the proceeds he paid for the films. Mrs. Johnson explains the transaction as respects her obtaining possession of the wages due Jones and paying them to him by her own checks by stating that Jones was indebted to her as a roomer in one of

her buildings, and was always getting drunk, and had requested her to keep his money until he started for home; that her daughter would bring the money to her; that sometimes Jones would not want to accept the maney in cash and requested her to pay it to him by checks, which she did. While it appears from the evidence that Rozetta did not hire Jones in the first instance, it does appear that Jones entered the employ before Mrs. Johnson's association with Rozetta. It appears that after Mrs. Johnson had made the arrangement with Rozetta, which it is claimed was that of land-lord and tenant, Jones continued to work on at the picture show.

While it was expressly testified by Mrs. Johnson and Rozetta that the arrangement under which the show was run was that of landlord and tenant, Mrs. Johnson being the landlord and Rozetta the tenant, it is clearly inferable from the evidence that this was not the true relationship between the parties, but that Mrs. Johnson herself was operating the theatre and that Rozetta was one of her employees. The assumption by Mrs. Johnson of authority over the manner in which Jones should work, together with the facts that she gave directions around the theatre as to how it should be run; that, through her daughter, without it appearing that Rozetta had anything to do with it, she obtained possession of the funds due Jones as salary, notwithstanding she may have done this with his consent and approval; that the lighting bills, etc., which Rozetta did not pay were presumably paid by Mrs. Johnson; that Rozetta had not paid her any rent but still owed her; that the proceeds from the operation of the theatre were turned over to Mrs. Johnson's uncle, and that the ultimate des-tination of these proceeds did not appear, authorized the inference that Mrs. Johnson was operating the theatre and that Jones and Rozetta were her employees.

The judge therefore did not err in so finding and in affirming the finding of the board of review.

*Judgment affirmed. Sutton and Felton, JJ., concur.*