MEREDITH PUBLISHING COMPANY, Appellee, v. IOWA EMPLOYMENT SECURITY COMMISSION et al., Appellants.

No. 45921.

OCTOBER 27, 1942.

668

J. Charles Crawley and Homer M. Lyon, both of Des Moines, and George Finch, of Sioux City, for appellants.

Stipp, Perry, Bannister & Starzinger, of Des Moines, for appellee.

BLISS, J.— The facts are not in dispute. The controversy arises over the application of the provisions of this statute to the situation before us. The Commission contends that the employment relation of the appellee and Brumbaugh was such that the latter was within the benefit coverage of the statute, while it is the contention of the appellee that Brumbaugh was not its employee, in the common acceptation of that term, but was an independent contractor, and therefore excluded from the provisions of the act.

The appellee is an Iowa corporation, with its office and place of business in Des Moines, and is engaged in publishing two magazines, one of which is Successful Farming. This publication has a very large number of subscribers. To obtain and retain subscribers it employs agents to solicit subscriptions on a commission basis. On or about June 20, 1938, Brumbaugh signed a written application to appellee for his appointment as an agent only to solicit subscriptions for Successful Farming on a commission basis. This application provided that the applicant agreed to comply with the provisions of the agency contract, and to solicit subscriptions pursuant to the contract and in accordance with printed forms to be furnished him by the appellee. The application also stated that Brumbaugh agreed to correctly account each day for all subscription payments received.

On the same day an agency contract was executed by Brumbaugh and by Speckman, branch manager of the appellee. It provided that: Brumbaugh was to solicit subscriptions to

Successful Farming in accordance with subscription offers issued by the company during the term of the contract; nothing in the contract should be construed as creating the relation of employer and employee between the agent and the company or its branch manager; ''Said subscription agent shall be free to exercise his own judgment as the time, method, manner, and place of solicitation but The Company or its Branch Manager may from time to time prescribe such rules and regulations respecting the conduct of the business, not interfering with such freedom of action of the subscription agent and which rules and regulations shall be observed and conformed to by him. * * * The Company may prescribe the form, plan, and terms governing all subscriptions solicited and may, from time to time, change, modify, or discontinue any subscription plan or plans or the terms governing the same''; the authority granted to the agent is limited solely to the solicitation of subscriptions to the company's publication, for which he shall be entitled to the retention of commission for each subscription secured by him at the rate now or hereafter fixed by the company; he shall keep, on the forms furnished, correct records of all subscriptions secured by him and report thereon as required; the contract and no rights therein shall be subject to assignment by the subscription agent; the contract can be terminated by either party at any time without assigning any cause or giving any prior written notice.

It was the plan of the company to send a number of these agents into a city or town, of suitable location, so that the entire county could be thoroughly canvassed for subscribers. One of their number, experienced in the work, was placed at the head of the group, although he was merely a solicitor of subscriptions operating under an agency contract as set out above. He would assign to each solicitor a rural mail route to be canvassed by that solicitor alone. It usually took from a week to two weeks to work a mail route. The agents were asked to contact at least 70 per cent of those on the mail route. Each agent took with him subscription blanks furnished by the appellee. One copy was given to the subscriber, and one copy was retained by the agent for the appellee. All subscriptions were for cash and no credit was extended. Each agent was required to

furnish his own transportation over the route, and to pay the expense thereof, and also for lodging, food, and all other expenses. Each night he accounted to the solicitor in charge of the group for all subscriptions taken during the day. He gave to him the signed subscription orders, and after retaining as his commission 80 per cent of each subscription, he delivered to him the remaining 20 per cent thereof. He also reported to him the number of hours he worked each day or whether he worked at all. The agent was at liberty to work only such time as he wished and when he wished, although the branch manager and the solicitor in charge suggested to them that they put in eight hours a day and impressed upon them that the more diligently they worked the more money they would receive. A bonus was paid if an agent sold over 60 subscriptions in a week. Each agent was required to confine himself to the mail route assigned to him. He made no report as to those upon whom he made calls. At times he did not solicit 70 per cent of the route patrons. The only remuneration he received was the commission retained by him. He traveled his route alone and was not directed, supervised, or controlled by anyone in doing this. The agents were assigned separate mail routes so that there would be no conflict in their canvassing. The solicitor in charge received the same commission as the others for each subscription, and a small percentage of the subscriptions procured by the others for the service which he rendered the appellee. No deductions were made by the appellee from the earnings of any agent, nor was any part of the Social Security Act taxes paid therefrom. The agents sold no subscriptions for any publication other than Successful Farming. There was never any discussion about their selling any other subscriptions.

Brumbaugh, before taking this job, had done some work for road-building contractors in Iowa and Kansas. After he signed the contract with appellee, he was given a three-day course of instructions respecting the method of securing subscriptions. The branch manager went with him one day. The solicitor in charge traveled with him one day, and the latter's son went out with him once. Occasionally the solicitor in charge, sometimes referred to as the crew manager, or the branch manager, would give the agents a sales talk.

The same general method which we have outlined was followed in each county. The group canvassed several counties. Brumbaugh worked about three months. His commissions were $300. There is nothing in the record as to how many hours he put in each week, excepting for the last two weeks. During the next to the last week he worked 12 hours and procured 26 subscriptions, for which he retained as commissions $20.40. He should have remitted $5.10, which he did not do, but he claimed he was entitled to hold it out. During the last week he worked 19 hours and produced five subscriptions, and made no remittance to the company. Other solicitors of the group during these two weeks worked an approximate average of 30 hours a week. Brumbaugh voluntarily gave up his contract and quit work wholly of his own accord. He gave as a reason for his quitting that his expenses exceeded his receipts. Francisco, the solicitor in charge of this particular group, had been soliciting subscriptions for the appellee on a commission for over seven years.

We have set out substantially all of the evidence. There is no evidence that anyone connected with the appellee exercised any control over Brumbaugh in the performance of the services which he agreed to perform, or that anyone exercised any direction or control over him in his daily work of canvassing his territory, or any detail of that work. His physical efforts were not controlled, nor the time, place, method, or character of his work. He did nothing but solicit. No other work of any kind was performed by him for the appellee. His earnings depended very largely upon his own efforts. This is apparent from the amount of money which he received during the few hours he worked during his last two weeks. Not only did the appellee exercise no control over him in fact, but there is no evidence that it had any right to exercise control over him. Whatever direction, supervision, or suggestions which it gave to him were with respect to the general result to be accomplished. Of course, the appellee was interested in retaining and increasing the number of its subscribers. It was interested in the diligent effort and efficiency of its subscription agents to accomplish that end by contacting prospects in every county as widely and as

effectively as possible. It had a right to plan the most effective campaign to that end, and fix the terms of subscription. Such plans are in no way different from the plans and specifications of an owner who lets a lump-sum building contract to an independent contractor to furnish the material and labor to construct a building. Such a one may have an architect supervise the work, or may make suggestions, or see to it that the work is done properly or according to the plans, but the builder, nevertheless, is an independent contractor. There is nothing in the record which has the slightest tendency to establish that the appellee exercised or had the right to exercise the control or direction over this agent in the solicitation of subscribers which the employer or master exercises or has the right to exercise over his servant.

I. The principles of law applicable to this proposition are so uniformly recognized everywhere, and have been so many times clearly and definitely announced by this court, that extended discussion would be out of place.

In Arne v. Western Silo Co., 214 Iowa 511, 516, 242 N. W. 539, 542, a compensation case, claimant sold products on a commission, using his own car, paying his own expenses, and working when he pleased. Either party to the contract might cancel it at any time. In holding that he was an independent contractor, we said:

"An independent contractor within the generally accepted legal definition of the term is: a person who in the pursuit of an independent business, undertakes to do specific work for another person, using his own means and methods, without submitting himself to the control of such person in respect to all of its details. An independent contractor represents the will of his employer only as to the result of his work, and not as to the means by which it is accomplished."

In Pace v. Appanoose County, 184 Iowa 498, 508, 168 N. W. 916, 919, a compensation case, we defined an employee to be a person bound to the duty of service, subject to the command of his master, as to the manner in which he shall do his work. In the same case, quoting from 1 Labatt's Master & Servant, 2d Ed., section 64, we approved the following statement:

" 'The accepted doctrine is that, in cases where the essential object of an agreement is the performance of work, the relation of master and servant will not be predicated, as between the party for whose benefit the work is to be done, and the party who is to do the work, unless the former has retained the right to exercise control over the latter, in respect to the manner in which the work is to be executed. This attribute of the relation supplies the single and universally applicable test by which the servants are distinguished from independent contractors.' "

We call attention to a few of our decisions supporting these statements of the law. See Storm v. Thompson, 185 Iowa 309, 170 N. W. 403, 20 A. L. R. 658; Norton v. Day Coal Co., 192 Iowa 160, 180 N. W. 905; Humpton v. Unterkircher, 97 Iowa 509, 66 N. W. 776; Root v. Shadbolt & Middleton, 195 Iowa 1225, 193 N. W. 634; In re Estate of Amond, 203 Iowa 306, 210 N. W. 923; Burns v. Eno, 213 Iowa 881, 240 N. W. 209; Page v. Koss Constr. Co., 215 Iowa 1388, 245 N. W. 208; Johnson v. Selindh, 221 Iowa 378, 265 N. W. 622; Ash v. Century Lbr. Co., 153 Iowa 523, 133 N. W. 888, 38 L. R. A., N. S., 973; Arthur v. Marble Rock Consol. Sch. Dist., 209 Iowa 280, 228 N. W. 70, 66 A. L. R. 718; Svoboda v. Western Fuel Co., 195 Iowa 1137, 193 N. W. 406; Lang v. Siddall, 218 Iowa 263, 254 N. W. 783.

Such interest as the appellee manifested and such attention as it gave to the work of its agent was wholly consistent with the independent-contractor relation of Brumbaugh. It was clearly within the principle so well stated by the Tennessee court in Odom v. Sanford & Treadway, 156 Tenn. 202, 209, 299 S. W. 1045, 1046, and quoted in Grace v. Louisville & N. R. Co., 19 Tenn. App. 382, 388, 89 S. W. 2d 354, 358, to wit:

" 'As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control,—at least to enable him to see that the contract is performed according to the specifications. The employer may exercise a limited control over the work without rendering the employee a mere servant, for the relation of master and servant is not inferable from the reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract.

* * * Thus a person employed to perform certain work is not necessarily a mere servant because the contract provides that the work shall be subject to the approval or satisfaction of the employer. Such a provision is not an assumption by the employer of the right to control the employee as to the details or methods of doing the work, but is only that the employer may see that the contract is carried out according to the plans.' "

The terms "master," "servant," and "independent contractor" are thus defined in volume 1 of Agency in the American Law Institute's Restatement of the Law, section 2:

"(1) A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.

"(2) A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

Section 220 of the same volume sets out a number of matters of fact which are of significance and to be considered in determining whether one is a servant or an independent contractor. Some decisions from other jurisdictions, which support the holdings of this court as exemplified by its decisions cited above, and which are ably written and instructive, are: Stockwell v. Morris, 46 Wyo. 1, 22 P. 2d 189; McCarthy v. Souther, 83 N. H. 29, 137 A. 445, 450; Mitchell v. Maytag Pacific-Intermountain Co., 184 Wash. 342, 51 P. 2d 393; James v. Tobin-Sutton Co., 182 Wis. 36, 195 N. W. 848, 29 A. L. R. 457; American Nat. Ins. Co. v. Denke, and American Nat. Ins. Co. v. Shepherd, 128 Tex. 229, 95 S. W. 2d 370, 107 A. L. R. 409; Leachman v. Belknap Hdwr. & Mfg. Co., 260 Ky. 123, 84 S. W. 2d 46; American Sav. L. Ins. Co. v. Riplinger, 249 Ky. 8, 60

S. W. 2d 115; Income L. Ins. Co. v. Mitchell, 168 Tenn. 471, 79 S. W. 2d 572; Manus v. Kansas City Distr. Corp., 228 Mo. App. 905, 74 S. W. 2d 506, 510; Wesolowski v. John Hancock Mut. L. Ins. Co., 308 Pa. 117, 162 A. 166, 167, 87 A. L. R. 783; Neece v. Lee, 129 Neb. 561, 262 N. W. 1; Aldrich v. Tyler Grocery Co., 206 Ala. 138, 89 So. 289, 17 A. L. R. 617; Ignato-witch v. McLaughlin, 66 N. D. 132, 262 N. W. 352; Kassela v. Hoseth, 217 Wis. 115, 258 N. W. 340; Khoury v. Edison Elec. Illum. Co., 265 Mass. 236, 164 N. E. 77, 60 A. L. R. 1159; Har-rington v. Lee Mercantile Co., 97 Mont. 40, 33 P. 2d 553; Dohner v. Winfield Wholesale Groc. Co., 116 Kan. 237, 226 P. 767; Gall v. Detroit Journal Co., 191 Mich. 405, 158 N. W. 36, 19 A. L. R. 1164; Barton v. Studebaker Corp., 46 Cal. App. 707, 189 P. 1025; American Nat. Ins. Co. v. Kennedy, Tex. Civ. App., 101 S. W. 2d 825; Shell Petroleum Corp. v. Linham, Miss., 163 So. 839; Peters v. California Building-Loan Assn., 116 Cal. App. 143, 2 P. 2d 439; 1 C. C. H. Unemployment In-surance Service 3704, paragraph 8716; Luckie v. Diamond Coal Co., 41 Cal. App. 468, 480, 183 P. 178, 183; Kneeland-McLurg Lbr. Co. v. Eder, 196 Wis. 402, 220 N. W. 199; State ex rel. Sexauer Mfg. Co. v. Grimm, 217 Wis. 422, 259 N. W. 262; In re Binder, 259 App. Div. 1103, 21 N. Y. S. 2d 369; C. C. H. Mis-souri Unemployment Insurance Service, 28034.

II. While the appellants forcefully argue that such direc-tion as the appellee used in the work of Brumbaugh was, at least, kindred to that used by an employer, the meat of their argument is based upon the theory of coverage stated in the following grounds for reversal, to wit:

"1. Decisions defining and fixing various relations under the common law are not relevant, nor do they establish or limit the boundaries of the statutory relationship of 'employ-ment' created by the Iowa Employment Security Law.

"2. The Commission did not err as a matter of law in holding Brumbaugh to be an individual in 'employment' be-cause the Iowa Employment Security Law creates an employ-ment relationship broader in scope and coverage than the common law relationships of employer-employee-independent contractor."

Before discussing the respective contentions of the parties, it may be helpful to refer to the pertinent provisions of this Employment Security Law, its purpose, its historical background, and its relationship to congressional legislation which set the pattern for similar state enactments, although there had been some earlier state pioneering. Federal legislation was adopted imposing a pay-roll tax upon employers, but providing that when any state enacted mandatory unemployment-insurance legislation which complied with certain minimum standards specified in the congressional legislation, then the contributions paid by employers to their employees would be credited up to a certain percentage (90 per cent) as an offset against the federal pay-roll tax. Because of this device, which enabled the employer to keep at home, for the unemployment relief of his wage earners, nine tenths of this excise tax which otherwise would have gone to Washington for general spending, within a period of two years after the enactment of the Social Security Act, fifty states and outlying possessions passed unemployment insurance or compensation legislation. The Federal Unemployment Tax Act, 26 U. S. C., Int. Rev. Code, section 1600 et seq., does not prescribe a system of unemployment compensation or employment security, but leaves to each state the privilege of working out its own legislation so long as it complies with certain minimum standards and requisites specified in the federal act, on which the social security board bases its approval. This board also is in a position to exercise and enforce regulatory powers over state legislation. There is a close general inter: relation maintained between the federal and state legislation on this subject matter with respect to its provisions and purposes. But what we are chiefly interested in is the nature and scope of the employment relationship which is the basis for the tax of the employer, and the benefit contributions, and coverage. Both the federal unemployment tax and the state unemployment-compensation contributions are based on wages paid or payable for employment and are applicable only to those between whom there exists an employment relation.

The law of employment, the status of employer and employee, had its origin in the relationship of master and servant, under which the servant performs services for wages or other

remuneration under a contract of hire. It is this common-law conception of the employment relationship which has been carried into and made a part of the federal legislation such as the Social Security Act and the Federal Unemployment Tax Act. This relationship between the individual who performs such services and the individual or organization for whom he performs them must be the legal relationship of employer and employee. If such an individual is subject to the control of the one for whom the services are performed, merely as to the result to be accomplished by the work and not as to the means, methods, and manner of accomplishing the result, he is an independent contractor and not an employee. This is the construction of the employment relationship under these federal acts which the bureau of internal revenue and the social security board have placed upon them. Under their rulings, if the individual performing the services is, in fact, free from direction and control over the manner of the performance of his services, he is excluded from the coverage of this particular congressional legislation. In the 4th Edition (1940) of the "Foundation Guide for Payroll Taxes," by Kixmiller and Christie, page 89, is this statement:

"The federal regulations adopt the attitude of the common law on the employment relationship; namely, that although other elements may be important, the determining element in fixing the employment relationship is the right of control. All the states are in accord on this proposition but in addition most state laws have included two other elements to serve as co-ordinates with the 'right of control' in determining the existence of an employment relationship. The usual provision of coverage in the state laws reads as follows:

" 'Employment means all service for remuneration unless— (1) the individual performing the service is free from control over the manner and method of performance; (2) the service is either outside the usual course of the business for which such service is being performed or else it is performed outside of all the places of business; and (3) the individual performing the services is engaged in an independent trade, occupation, profession or business.'

"At common law an individual who performed personal services and was not an employee was called an independent contractor, It is to be noted that none of the state laws mention the phrase 'independent contractor' but speak only of 'employment' as defined in the law."

On pages 195 and 196 of the same book is the following:

"Section 1607 (c) of the Internal Revenue Code defines employment as any service of whatever nature, performed within the United States by an employee for his employer. From this definition it can be seen that the Act imposes the tax only on the employment relationship as that is known at common law. The regulations make this even clearer by the use of the following language:

" 'An individual is in the employ of another within the meaning of the Act if he performs services in an employment as defined in Section 1607 (c). However, the relationship between the individual who performs such services and the person for whom such services are rendered must, as to those services, be the legal relationship of employer and employee. * * * '

" 'Generally the relationship (that of employer and employee) exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done.' "

█ It will be noted that these definitions and interpretations are in strict accord with the pronouncements of this court on the employer-employee-independent-contractor relationship. Under these definitions and statutory constructions, independent contractors are not to be considered "in employment," and the services they perform are excluded in determining whether the employer has a sufficient number of individuals in employment to be subject to the pay-roll tax, and for the computation of its amount.

It is true that most of the states, in the enactment of un-

employment compensation laws, have, by the terms thereof, sought to narrow the separation and distinction between employee and independent contractor, and have made the coverage of their legislation broader in this respect than the federal law. But Iowa has not seen fit to do so. It has so worded this particular section of the statute as to conform to the conception of the above-noted federal boards, to the common-law conception of employer-employee-independent-contractor relationship, and to the pronouncements of this court and of every other court with respect thereto. It has made the factor of control or direction of the performing individual dominant.

Section 1551.25 (G) 6, Code, 1939, which was in effect at the times pertinent to this cause, reads thus:

"Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the commission that

"(a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact."

Other states, somewhat less than forty in number, have added two additional conditions to the burden imposed upon the employer, which are not in the Iowa statute. A statute, Illinois Revised Statutes, 1941, chapter 48, section 218 (f) (5), which is typical of all of these is as follows:

"(5) Services performed by an individual shall be deemed to be employment subject to this Act unless and until it is proven in any proceeding where such issue is involved that—

"(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(B) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) Such individual is engaged in an independently established trade, occupation, profession or business."

It was not necessary for the appellee to meet any but the

first condition, and it appears to us that it did this without any question. While not required to, it also met the second condition. There was also no obligation upon it to satisfy the commission as to the third condition, but it seems to us that it also did this. For, though Brumbaugh apparently was not engaged in any independently established trade, profession, or business, his occupation was in no way connected with the printing or publishing business.

The appellants give us no definite principle or rule of law, or legal guide, or yardstick to determine when one performing service is or is not within the coverage of the statute. They simply say that decisions defining and fixing various relations under the common law are not relevant, nor do they establish or limit the boundaries of coverage under the statute, since the employment relationship is broader in scope and coverage than the common-law relationships of employer-employee-independent contractor. But all this is very indefinite. It marks out no clear-cut standard. It places no limitation or stopping place to this scope of coverage. In fact, it leaves the delimitation solely to the whim, inclination, or view of the tribunal and its personnel at any particular time. It violates the sound and time-honored principle that ours is a government of laws and not of men.

█ We have a number of well-defined canons of statutory construction. In Jefferson County Farm Bureau v. Sherman, 208 Iowa 614, 618, 226 N. W. 182, 184, one of them is stated thus:

"It is also a well recognized rule of construction that the legislative intention is to be deduced from the language used, and the language is to be construed *according to its plain and ordinary meaning.*" (Italics ours.)

Of course, the legislature may expressly define the meaning of any term in a statute in a sense different from its accepted meaning. Equitable L. Ins. Co. v. Iowa Employment Sec. Comm., 231 Iowa 889, 2 N. W. 2d 262, 139 A. L. R. 885. It has not done so in the Iowa Employment Security Law. Why, then, should the words "employment" or "employee" be given any

other than their plain, ordinary, and accepted meaning, and as uniformly declared by this court and other courts?

Kansas, Massachusetts, and Texas, like Iowa, limit the statutory conditions or tests above referred to, to the single factor of direction or control of the worker in the performance of service. Connecticut, New York, Mississippi, and Kentucky, in their unemployment-compensation statutes, expressly designate the employment relation as that of the common-law relationship of master and servant, or employer and employee. The states of Wisconsin, Nebraska, Missouri, Wisconsin, Wyoming, and Tennessee all have the statutory provision with the typical three tests or conditions which we have set out above, yet the courts of those states, in construing these unemployment-compensation statutes, have adopted the common-law definition of employee as distinguished from independent contractor, and have denied coverage where the performer of the service came within the accepted status of an independent contractor. See Wisconsin Bridge & Iron Co. v. Industrial Comm., 233 Wis. 467, 290 N. W. 199; Central Wisconsin Tr. Co. v. Industrial Comm., 236 Wis. 496, 295 N. W. 711; Hill Hotel Co. v. Kinney, 138 Neb. 760, 295 N. W. 397; Unemployment Compensation Comm. v. Mathews, 56 Wyo. 479, 111 P. 2d 111; Meyer & Co. v. Unemployment Comp. Comm., 348 Mo. 147, 152 S. W. 2d 184; Texas Co. v. Bryant, 178 Tenn. 1, 152 S. W. 2d 627, 178 Tenn. 680, 163 S. W. 2d 71; Fuller Brush Co. v. Industrial Comm., 99 Utah 97, 104 P. 2d 201, 129 A. L. R. 511; S. S. T. 279, Internal Revenue Bulletin, 1938-15-9294.

We call attention also to what the counsel for the Delaware Commission said of this matter:

"The three conditions contained in Section 2 (i) (5) of the law (Del. Sec. 4012) are probably intended to define the relation of employer and employee for the purpose of clarifying it in doubtful or 'borderline' cases. The statutory language creates a prima facie presumption that all persons who perform services for wages, including commissions, are to be regarded as employees until the contrary is shown. In my opinion these three conditions were not intended to enlarge the legal conception of employer and employee, or of master and servant,

already established by a line of court decisions, nor to create a new and special group of persons to be treated as employees or servants for the purpose of the Unemployment Compensation Act although they would not be employees or servants within the meaning of the previously existing law on that subject.'' Volume 2, C. C. H. Unemployment Insurance Service 11519, paragraph 8026.

The appellants insist that the legislature, in the statute under consideration, so defined ''employment'' as to definitely serve as a basis for the extended coverage for which they contend. We find no support for such assertion.

Appellants also argue that the common-law conception of the master-and-servant or employer-and-employee relation is based upon the respondeat superior doctrine, and that such conception has no place in a statute of this kind. Whether or not that doctrine is the basis for the distinction between a servant and an independent contractor is of no materiality, but it is highly material and important that this distinction be retained in construing the terms ''employment'' and ''employee'' in this statute. We think the Iowa Legislature had a definite purpose in making the factor of direction or control of the worker in the performance of his service the test of coverage. In other words, if the worker was subject to such direction or control, he is within the statute, and if he is not so subject, and is an independent contractor, then he is excluded from the statute. There is wisdom in such a provision and it is in keeping with the purpose of the legislation.

Let us look at the guide for interpreting chapter 77.2 of the 1939 Code, as set out in section 1551.08 thereof. As therein stated, the economic evil sought to be destroyed or remedied is that arising from ''*involuntary unemployment*.'' Relief is sought for persons ''*unemployed through no fault of their own*.'' In other words, *forced unemployment*. Such unemployment is found among those workers, servants, and employees whose time and labor is under the direction, control, and supervision of the employer—those who labor only as and when the master says they may do so. The Iowa statute has no application to the person who is an independent contractor whose time and whose

labor are within his own control. He can accept a contract or decline it. He can work or quit work, just as Brumbaugh could, and did.

Factors and brokers who sell upon commission are uniformly held not to be within the coverage of such statutes. The same is true of salesmen who sell upon commission and without direction or control with respect to the details of the performance of their work. Such workers are the masters of their own time and efforts. The commissions in many states have excluded insurance agents from coverage, and ten or more states by provision of statute have excluded therefrom various types of insurance solicitors and agents. This is the ruling also of the bureau of internal revenue.

Appellee states in its opening printed argument that it understands that the internal revenue bureau ruled that commission-subscription salesmen of Crowell Publishing Company, P. F. Collier & Sons Corporation, Periodical Sales Co., Inc., McCall Corporation, and Women's Home Companion Reading Club are not employees within the meaning of the Social Security Act. They also state that pending the proceedings in this case, the internal revenue bureau, on July 18, 1939, ruled that the subscription agents and crew managers of the appellee are not employees of the company within the meaning of the taxing provisions of Titles VIII and IX of the Federal Social Security Act, 42 U. S. C., sections 1001 et seq., 1101 et seq., and that in the opinion of the bureau, the appellee neither exercises nor has the right to exercise over the services performed by such individual the control and direction as is necessary to establish the relationship of employer and employee. The appellants, in their reply argument, do not dispute these statements.

The Iowa Commission has, itself, excluded insurance agents from the coverage of this statute. (Volume 2, C. C. H. Unemployment Insurance Service 18517, paragraph 8015.) On January 3, 1938, Mr. Crawley, counsel for the Iowa Commission, gave a written opinion so stating to the Equitable Life Insurance Company of Iowa, with respect to its general agents, soliciting agents, and brokers engaged in soliciting life insurance on a commission basis. In this opinion it quotes section 1551.25(G)6,

of the Code, which we have set out. It refers, in support, to some authorities we have cited. It states:

"In determining whether or not the individuals in question are in 'employment', it is, therefore, not only necessary but proper to consider the rules of law and decisions of the courts as to what constitutes direction and control. In doing so, the thought is kept in mind that the language of the section has for its intent control and direction over the performance of the service and not the result of the performance of such service. This would seem to be inescapable conclusion from even a hasty examination of the section. The burden of proof is upon the applicant (company) to overcome the statutory presumption, but this is met by showing in any case that the performance of service is free from direction and control both as a matter of contract and in fact. * * *

"In view of these findings, the services performed by the general agents, soliciting agents and brokers of the Equitable Life Insurance Company of Iowa are deemed not to be in employment subject to the Iowa Unemployment Compensation Law."

In view of these rulings, we see no reason why a distinction should be made between such solicitors and Brumbaugh.

Appellants in argument state:

"The whole philosophy of the act demands that its coverage be broadened beyond age-old common-law relationships of master and servant, that coverage be extended to all individuals to whom involuntary unemployment is a threat and to all employers, and industry in general, upon whose shoulders rest the burden of economic insecurity."

It is not for us to pass upon the soundness of this economic philosophy. But, it is our duty to say that it is far beyond the purpose and scope of the Iowa Employment Security Law. This law was never intended to, and does not, extend "to all individuals to whom involuntary unemployment is a threat." By its express terms, it excludes hundreds of thousands of those who labor but who are as much exposed to the "serious menace to their health, morals and welfare," due to the economic in-

security of unemployment, as those who are included. To begin with, it applies only to those employers who have eight employees over a specified period. Those groups of employees of less than eight, under any humanitarian philosophy, are no less entitled to employment security than the larger groups. The federal acts, except that of the District of Columbia, and the unemployment-compensation acts of every state, including Iowa, expressly exclude that great body of laborers described as "agricultural or farm labor" with all of its varied classifications. Also excluded is that multitude who are engaged in domestic service in and about the home—the cooks, maids, butlers, valets, laundresses, yardmen, gardeners, janitors, and chauffeurs of family automobiles. In addition to these, there are several other groups of workers who are expressly excluded by the Iowa statute. There is also the vast number of self-employed. All of the millions who are thus excluded are as much exposed to the hazards of unemployment as those who are included. As stated in Moorman Mfg. Co. v. Iowa Unemployment Comm., 230 Iowa 123, 135, 296 N. W. 791, this statute was not intended to be all-inclusive.

We can find no justification under the law or the facts for including within the coverage of this statute the appellant Brumbaugh. He was not an employee or servant of the appellee, nor under its direction or control in the performance of service under his contract or in fact. There can be no question about this. Suppose that in driving his automobile over a mail route, seeking to find subscribers for Successful Farming, he had negligently injured someone. We think no one would say that the appellee would be liable in damages to such an injured person.

The Employment Security Law by neither expression nor reasonable implication covers the appellant Brumbaugh.

Section 1551.12(J), Code, 1939, provides that any order or decision of the Commission may be modified, reversed, or set aside (1) if it acted without or in excess of its powers; (2) if the facts found do not support its order; (3) if there is not sufficient competent evidence in the record to warrant making the order or decision.

We find that each and all of the three grounds stated sustain the setting aside of the order, decision, or decree of the Commission.

Our decision herein is in full accord with that of Moorman Mfg. Co. v. Iowa Unemployment Comp. Comm., 230 Iowa 123, 296 N. W. 791, and there is no holding to the contrary in Kaus v. Unemployment Comp. Comm., 230 Iowa 860, 299 N. W. 415; Iowa Public Serv. Co. v. Rhode, 230 Iowa 751, 298 N. W. 794; Woods Bros. Constr. Co. v. Iowa Unemployment Comp. Comm., 229 Iowa 1171, 296 N. W. 345; Equitable L. Ins. Co. v. Iowa Employment Sec. Comm., 231 Iowa 889, 2 N. W. 2d 262, 139 A. L. R. 885.

Appellants have cited numerous decisions from other jurisdictions construing statutes containing the three-point tests, with fact situations much different from that disclosed by this record. These authorities support the position of the appellants respecting the broader coverage claimed for this legislation. These authorities are not pursuasive, for the reasons stated herein. Some of these decisions are McDermott v. State of Washington, 196 Wash. 261, 82 P. 2d 568; In re Appeals of Farwest Taxi Service, 9 Wash. 2d 134, 114 P. 2d 164; State v. Goessman, 13 Wash. 2d 598, 126 P. 2d 201; Babb & Nolan v. Huiet, 1942, 67 Ga. App. 861, 21 S. E. 2d 663; Johnson v. Huiet, 1942, 67 Ga. App. 638, 21 S. E. 2d 437; Review Board of Unemp. Comp. Div. v. Mammoth Life & Acc. Ins. Co., 1942, Ind. App., 42 N. E. 2d 379; Industrial Comm. v. Northwestern Mut. L. Ins. Co., 103 Colo. 550, 88 P. 2d 560; Brannaman v. International Service Union Assn., 108 Colo. 409, 118 P. 2d 457, 137 A. L. R. 621; Life & Cas. Ins. Co. v. Unemployment Comp. Comm., 178 Va. 46, 54, 16 S. E. 2d 357; Unemployment Comp. Comm. v. Harvey, 179 Va. 202, 18 S. E. 2d 390; Schomp v. Fuller Brush Co., 124 N. J. L. 487, 12 A. 2d 702, affirmed 126 N. J. L. 368, 19 A. 2d 780; Superior Life Ins. Co. v. Board of Review, 127 N. J. L. 537, 23 A. 2d 806; Unemployment Comp. Comm. v. Jefferson Standard L. Ins. Co., 215 N. C. 479, 2 S. E. 2d 584; National Tunnel & Mines Co. v. Industrial Comm., 99 Utah 39, 102 P. 2d 508; Combined Metals Co. v. Industrial Comm., 101 Utah 230, 116 P. 2d 929; Singer Sewing Machine Co. v. State Unemp. Comp. Comm., 167 Or. 142, 103 P. 2d 708, 116 P. 2d 744, 138

A. L. R. 1398; McKinley v. Payne & Son Lbr. Co., 200 Ark. 1114, 143 S. W. 2d 38; Young v. Bureau of Unemp. Comp., 63 Ga. App. 130, 10 S. E. 2d 412; Bowman v. Atkinson, 136 Ohio St. 495, 26 N. E. 2d 798; In re Mid America Co., 31 F. Supp. 601. The judgment appealed from is affirmed.—Affirmed.

WENNERSTRUM, C. J., and STIGER, SAGER, HALE, OLIVER, GARFIELD, and MILLER, JJ., concur.