WILEY *v.* HARRIS *et al.*

(*Nashville,* December Term, 1950.)

Opinion filed March 9, 1951.

W. L. MOORE and CHARLES K. COSNER, both of Nashville, for plaintiff in error.

BREEDLOVE & BRILEY and HARRY MITTWEDE, all of Nashville, for defendants in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

During the year 1948 certain financially needy students at the Harris Advertising Art School in Davidson County rendered certain services for which each was given credit on the charges made by the school for tuition, room and board in its dormitories.

The Tennessee Commissioner of Employment Security was of the opinion that these students were employees of the Harris Advertising Art School within the meaning of the Tennessee Employment Security Act carried in the supplement to Williams' Code commencing with Sec-

tion 6901.25, with the result that the school had eight or more employees as defined by the Act, hence, that the school was liable for the taxes required by that Act. The school did not agree with the Commissioner. So it paid this tax under protest and brought this suit to recover the amount paid.

The Chancellor agreed with the insistences of the school and allowed the recovery. The Commissioner by appeal presents here the question of whether these students were employees within the meaning of the Employment Security Act. If they are not, then this school does not come within the terms of that Act, since the School otherwise employs only five persons.

In the year 1948 there were sixty-six students enrolled in this School. They lived in the dormitories. The school charges were $55.00 per month for room and board, and $375.00 per annum for tuition.

The school year is divided into four quarters. The number of students in each quarter who in exchange for services performed received credit against the school charges and the total amount of such credits allowed in each quarter are as follows:—First quarter, 8 students with credits of $1514.52; second quarter, 15 students with credits of $2249.49; third quarter, 18 students with a total credit of $1229.22; fourth quarter, 14 students with a total credit of $2866.22. For all these quarters there were five regular employees, who were not students.

It appears from the figures above that there is a substantial variance from quarter to quarter in the number of students rendering service in exchange for credit on their account and in the amount of credit allowed. It seems reasonable to think that the number of employees necessary to the proper operation of the school should be about the same in each of the four

quarters of the school year, and so should the compensation for the services necessary in such operation. The amount paid the five regular employees who were not students was constant throughout the four quarters. A permissible conclusion from these facts is that the services needed in the proper operation of the school each quarter and the reasonable value of such services did not control the school in determining the number of students to whom credit was allowed for services performed, nor the amount of compensation allowed for such services. This is consistent with the testimony of Mr. Harris, one of the owning partners of the school that, although "we, of course, operate our business on a sound business basis * * * we never put a student out of school so far as I can remember for non-payment", and, "instead of having a student feel that he is being given charity * * * we have created from time to time various opportunities for those students to help themselves through school".

The services rendered by these students are described by Mr. Harris as being (1) for the evening meal, the placing of eating utensils and wares on the dining room table, bringing the food out from the kitchen and putting it on the table where the students served themselves, removing the dishes to the kitchen for washing, and placing them in the washing machine; (2) coaching students as assistant instructors; (3) "one or two in the plant, one in the office and one or two who have no regular assignment and one * * * runs errands, just drives the car" and one whose only duty was "to take care of our dog for us".

Mr. Harris states that he and Mrs. Harris, the other partner, can easily instruct seventy-five students without the aid of these assistant instructors, and that the

cook and maid can take care of the aforementioned services in connection with the dinner meal, and the janitor can run the errands, etc., and the regular clerk in the office can take care of all that work; and that all of this would have been done by these regular five employees without increasing their wages, except for the fact that the school desires. to help these financially embarrassed students in a manner that will cause them to feel that they are not objects of charity.

All the services mentioned, with the exception of those connected with the dog, are services which some one had to render in the usual and proper operation of this school. The fact that Mr. and Mrs. Harris did have the time to render the services performed by the assistant instructors does not eliminate the fact that such assistance decreased their work. Though immaterial to the decision of this case, the statement of Mr. Harris to the effect that the five non-student employees would have rendered the services mentioned without additional compensation is necessarily only the opinion of Mr. Harris. In the light of every day experience, such a happening was quite unlikely.

The result obtaining by reason of the facts stated is that each of these students, pursuant to an understanding had by each with the school, rendered the school valuable services in return for which the school furnished each with all or some part of room, board and daily instruction and training in the art which these students had elected as their life professions.

The Tennessee Employment Security Act defines the employment to which the Act refers as being "service, * * * performed for wages or under any contract of hire, written or oral, express or implied". Williams' Code Supplement, 6901.26, subd. F(1). This statute de-

fines wages as being "all remuneration paid for personal services * * * including * * * the cash value of all remuneration in any medium other than cash". Williams' Code Supplement, Section 6901.26, subd. L. It is also provided by this statute that "services performed by an individual for wages shall be deemed to be employment subject to this act". Williams' Code Supplement, 6901.26, subd. F(6).

■ Nothing else appearing, it must necessarily be held that these students are employees within the statutory provisions above quoted and bring the School within the Act since, counting these student employees, the School had eight or more employees for the time required by the statute during the year 1948.

However, it is insisted by appellees that services rendered by students for credit on room, board and tuition are expressly excluded from the Federal Act, and are not expressly included in the Tennessee Act. Therefore, such students should be excluded under the Tennessee Act, appellees say, since the two statutes are intended to be co-operative.

To refute this legal proposition, appellant cites and quotes from *Standard Dredging Corp.* v. *Murphy*, 319 U. S. 306, 63 S. Ct. 1067, 1069, 87 L. Ed. 1416, wherein it is held that "We do not believe that the exemption of these employers from the Federal Act can operate to exempt them from state unemployment insurance taxes". Appellees counter with the statement that this decision is not in point in that the exemptions under the Federal Act were made "because of certain administrative difficulties". It is said that no such administrative difficulties arise from the exemption of these students. -

This same insistence was considered in the Iowa case of *Equitable Life Ins. Co.* v. *Iowa Employment Secur.*

*Comm.*, 231 Iowa 889, 2 N. W. (2d) 262, 265, 139 A. L. R. 885, wherein, after considerable discussion, the Court on page 890 holds: ''That the Iowa legislature may determine what shall constitute employment subject to taxation without regard to existing definitions or categories and that it is not required to conform in every respect to the national ideology upon the subject as expressed in the Acts of Congress, is well settled'', citing cases.

In further connection with this insistence, the appellees say that because of the exclusion in the Federal Act, the Tennessee ''Legislature should not be presumed to have intended coverage of these students''. The legislative history of the Federal statute and the very face of the State statute seem to reject this insistence.

The exemption of student services did not exist in the Federal Act until 1939. By its conduct in subsequently writing this exemption into the previously enacted statute, Congress may be said with reason not to have regarded such student services as exempt until the exemption was written into the Act in 1939.

The present Tennessee Employment Security Act was enacted in 1947. That Act expressly exempts from its operation ten specified kinds of employment. At that time the exemption of students by the Federal Act had been in the Federal Act for six years. The fact that the Tennessee Legislature elected not to list such student services among the express exemptions fairly well indicates a legislative intent that such employment should not be exempt from the provisions of the State Act. That is the view which was taken by the Iowa Court in *Equitable Life Ins. Co.* v. *Iowa Employment Secur. Comm.*, supra. In dealing with a similar situation the court said that ''the failure of the Iowa legislature, at its 1941 session, to amend the Iowa Act to conform to the

congressional amendments of 1939, is entitled to some weight''.

The next insistence of appellees is that the purpose of the Tennessee Employment Security Act, as shown by its preamble, Code Section 6901.25, Williams Supplement, negatives the idea that these students should be considered as employees under the Act. There is no doubt that the purpose of the Act as declared by the preamble is to provide compensation benefits during periods of involuntary unemployment. Too, it is well settled that this preamble may be looked to in construing the Act ''where there is doubt or ambiguity as to the scope of the enacting clauses''. *Queener* v. *Magnet Mills, Inc.*, 179 Tenn. 416-425, 167 S. W. (2d) 1, 5.

Our Employment Security Act is also a taxing statute, *Guaranty Mtg. Co. of Nashville* v. *Bryant*, 179 Tenn. 579, 586, 168 S. W. (2d) 182, and this preamble reflects it to be a purpose of the Act to provide for ''the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment''. The method provided by the Act to accomplish this ''systematic accumulation of funds'' is that an employing unit of eight or more employees who come within the Act shall contribute to the amount and manner specified by the Act to these funds. Since students rendering services for wages as defined by the Act are such employees it follows that the inclusion of such students in computing the number of employees in an employing unit does no violence to the purpose declared by the preamble of the Act. In fact, it is a logical consequence of the purpose declared.

Though the conduct of these appellees with reference to these students is, on the face of this record, quite commendable, yet the wording of the Tennessee Employ-

ment Security Act is such as to make it impossible to give the act the construction insisted upon by these appellees, in our opinion. Moreover, to so construe this act as to write an exemption for such student employees would require an ignoring of the fact that the Tennessee Legislature did not write this exemption into the statute though this exemption had been written for several years in the Federal Statute at the time our statute was enacted.

The decree of the Chancellor will be reversed, and the bill dismissed with all costs adjudged against the appellees, Isaac Harris and Elizabeth Harris.

All concur.